**In re Wilson AIKENS, Debtor.**

**Bankruptcy No. 87–00364S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 14, 1988.

Alan M. White, Community Legal Service, Philadelphia, Pa., for debtor.

Cynthia White, Law Dept.—Bkcy. Unit, City of Philadelphia, Philadelphia, Pa.

Edward Sparkman, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

█ The Debtor herein objects to the secured status asserted in a Proof of Claim filed by the City of Philadelphia (hereinafter referred to as "the City") for water and sewer charges on the ground that the City failed to index or to properly docket the liens allegedly giving rise to the secured status of the claim. Although the City's lien is open to question on several bases, we reject the Debtor's challenge here, because we find that errors in indexing and docketing judgments and/or liens do not affect the validity of same as between the parties.

The Debtor filed the instant Chapter 13 bankruptcy case on January 23, 1987. On July 27, 1987, the City filed a timely Proof of Claim for water and sewer charges, alleging that $1,046.69 was secured by a lien and $354.38 represented non-priority unsecured claims for such services. On November 19, 1987, the Debtor filed an Objection to this Proof of Claim, contending that "the City's claim has not been docketed on the judgment index as required by Pennsylvania law" and that therefore the entire claim should be deemed unsecured. The City answered, citing four separate court terms and five-digit numbers at which liens relating to the secured portion of the claim had been docketed. The matter came before us for a hearing on February 2, 1988.

The only witnesses at the hearing were James J. Kelly, who is in charge of the accounts receivable division of the City water department, and Pat John Evangelista, the employee of the County Prothonotary's office who was apparently most conversant with the filings by the water department. Both witnesses established that water liens are contained in volumes which are located in the Prothonotary's office in which each entry is given a court term and number. However, the court term and number is not established by the Prothonotary's office, as is the case in other court filings. Rather, the water department itself designates the numbers, assigning same according to the department's own, street-related account numbers from its computer print-outs. A volume with such print-outs is delivered to the Prothonotary once annually, usually in the fall. The names of the property owners on these print-outs are not in alphabetical order, as they are in the judgment index, but according to addresses. The Prothonotary's office does virtually nothing with the volumes except to act as their custodian and make them available to the public upon request.

The starting point of the Debtor's analysis is reference to the Pennsylvania Municipal Claims and Tax Liens Act, 53 P.S. § 7101, et seq. Enforcement of municipal claims for water and sewer charges is generally controlled by this law. 53 P.S. § 7101 (definition of "municipal claim"). The requirements for docketing and indexing such claims are set forth in 53 P.S. § 7106 of this law as follows:

§ 7106. Municipal claims first lien; cities of first class; docketing; judgment; execution

(a) All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all such claims heretofore lawfully imposed or assessed on any property in this Commonwealth, and all such claims hertofore lawfully imposed or assessed within six months before the passage of this act and not yet liened, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a lien on said property together with all charges, expenses, and fees added thereto for failure to pay promptly; and said liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate

with which the said property may become charged, or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property.

(b) With the exception of those claims which have been assigned, *any municipal claim, including interest, penalty and costs, imposed by a city of the first class, shall be a lien only against the said property after the lien has been docketed by the prothonotary.* The docketing of the lien shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien. *The prothonotary shall enter the claim in the judgment index....*

The Historical Note included in the annotated statutes indicates that 53 P.S. § 7106(b) was added by a 1963 amendment. This amendment appears to have the rather odd effect of specifically providing that claims in the City of Philadelphia, the only city of the first class in the Commonwealth, 16 P.S. § 210(2), and nowhere else, become liens only after they are docketed. *See* page 346 *infra.*

Focusing on this "unique provision for Philadelphia municipal water claims," the Debtor begins by emphasizing that his objection "is not an attempt to exercise avoiding powers, but strictly an attack on the validity of the purported lien under state law." Memorandum of Law in Support of Debtor's Objection to Claim of City of Philadelphia for Water Charges, at 3. The Debtor then points to two defects in the City's procedures for liening water and sewer claims which he contends support his position that the liens are invalid: (1) The claims are not indexed by the Prothonotary or otherwise; and (2) The claims are not properly docketed by the Prothonotary, in the fashion of any other proceeding. Thus, argues the Debtor, the City's purported liens should be stricken.

The City responds as follows: (1) Only *docketing,* as opposed to indexing, is necessary to create a valid lien by the terms of 53 P.S. § 7106(b); (2) The liens are, in at least some fashion, docketed with the Prothonotary; and (3) By the terms of 42 Pa.C.S.A. § 2704(2), the City's lien is not impaired by the Prothonotary's failure to perform his duties as to docketing.

We believe that the analysis of neither party hits the mark. Our beginning point is the observation that, historically in Pennsylvania, water and sewer liens become effective when the charges for such services are imposed upon ratepayers, without any prerequisite of any prior court filing by the municipality. *United States v. Oswald & Hess Co.,* 225 F.Supp. 607, 609–11 (W.D. Pa.1964), *rev'd on other grounds,* 345 F.2d 886 (3d Cir.1965); *In re Townsend,* 27 B.R. 22, 24 (Bankr.M.D.Pa.1982); *In re Taylor,* 17 B.R. 586, 588 (Bankr.W.D.Pa.1982); *Lower Merion v. Manning,* 95 Pa.Super. 322, 324–28 (1928); and *Philadelphia v. DeArmond,* 63 Pa.Super. 436, 439 (1916). However, for reasons unexplained in any sources that we were able to uncover, the Pennsylvania legislature, by enactment of 53 P.S. § 7106(b) in 1963, apparently changed this principle as to the City of Philadelphia only, by providing that, in this City, municipal claims are liens only *after* their docketing by the Prothonotary.

This legislative change raises a nice question as to the applicability of the holdings in *Townsend, supra,* and *Taylor, supra,* that generally Pennsylvania water and sewer liens are statutory liens, as opposed to judicial liens, in the City of Philadelphia. Since at least some sort of *docketing* of a lien now appears to be a prerequisite for the very existence of such a lien in the City, it might be argued that such liens arise only by virtue of a judicial proceeding, rather than, as elsewhere in the Commonwealth, without the necessity of a prior filing of any judicial proceeding. Thus, Philadelphia water and sewer liens may be classifiable as judicial liens rather than statutory liens. *See* 2 COLLIER ON BANKRUPTCY, ¶ 101.47, at 101–81 (15th ed. 1987). *Compare Gardner v. Pennsylvania Dep't of Public Welfare,* 685 F.2d 106, 109 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *In re Griggs,* 12 B.R. 443, 445–48 (Bankr.E.

D.Pa.1981); and *In re Barbe,* 24 B.R. 739, 740 (Bankr.M.D.Pa.1982) *with Townsend, supra;* and *Taylor, supra. Cf. In re Adams,* 40 B.R. 545 (E.D.Pa.1984) (City of Philadelphia's water and sewer liens are not "taxes" entitled to priority status under 11 U.S.C. § 507(a)(7)(B)). Whether the City's lien is "judicial" or "statutory" is the determinative factor as to whether a debtor could utilize 11 U.S.C. § 522(f)(1) to avoid a Philadelphia water and sewer lien. However, we note that the Debtor is not seeking here to avoid the City's liens pursuant to 11 U.S.C. § 522(f)(1), and we therefore cannot reach this question here.

The City's argument that the docketing and indexing requirements are entirely irrelevant to the issue of the validity of its liens, at least as to its priority status vis-a-vis other creditors, must be rejected. Being "creatures of statute, ... of course strict compliance is necessary if the lien is to be upheld." *Dickson City v. Senkosky,* 162 Pa.Super. 612, 614, 60 A.2d 545, 546 (1948). It is the responsibility of the City, as the party offering the liens for record, to see that they are properly docketed and indexed. *Commonwealth v. Roberts,* 392 Pa. 572, 586, 141 A.2d 393, 400 (1958); and *Houser v. Childs,* 129 Pa.Super. 565, 567–69, 196 A. 547, 548 (1938). Moreover, here, the water department took such an active role in the recording process that it was bound to discern whether the docketing and indexing had been properly effected by the Prothonotary.

Clearly, 42 Pa.C.S.A. § 2704 does not change this result, as regards the docketing and indexing of liens. That statute refers only to a written report which the Prothonotary is to prepare regarding entry of judgments. It is this report alone which § 2704(2) provides "shall not impair the validity of any judgment or the lien thereof." Preparation of such a report is not in issue here.

The principles which we believe control our disposition here arise from the posture from which the Debtor levels his attack. The Debtor expressly states that he is *not* attacking the liens in the shoes of a judgment creditor, or the "ideal" judgment creditor, the trustee. See 11 U.S.C. § 544(a). Therefore, the Debtor expressly places himself in the shoes of a judgment debtor attacking the failure of his judgment creditor to properly docket or to index an apparently otherwise undisputed claim against him. Given this stance, as opposed to that of the trustee, the Debtor cannot prevail. *Compare In re Blakey,* 78 B.R. 435, 437 (Bankr.E.D.Pa.1987); *In re Chandler,* 76 B.R. 460, 464 (Bankr.E.D.Pa.1987); *In re Morrison,* 69 B.R. 586, 590 (Bankr.E.D.Pa.1987); and *In re Duffy-Irvine Associates,* 39 B.R. 525, 527–30 (Bankr.E.D.Pa. 1984).

We believe that the City is correct in its assertion that, even when 53 P.S. § 7106(b) is read as closely as the Debtor asks us to read it, it does not require that the lien of a municipal claim of the City of Philadelphia must be entered in the judgment index for the lien to be validated. Rather, the statute provides that docketing triggers the validity of the lien. Particularly in light of the line of cases cited at page 346 *supra* which indicate that, but for the presence of § 7106(b), no judicial entry at all is required to give rise to a lien for municipal water and sewer claims, we cannot conclude that this statute can be read to require that indexing must occur before the lien of a municipal claim becomes valid.

Furthermore, as between a judgment creditor and judgment debtor, a failure to index a judgment does not affect the validity of its lien. *See Crouse v. Murphy,* 140 Pa. 335, 340–41, 21 A. 358, 359 (1891); *Bickel's Appeal,* 15 WEEKLY NOTES OF CASES 234 (Pa.1884); *Irish v. Harvey & Co.,* 44 Pa. 76, 77–78 (1862); and 20 P.L.E. 310 (1959).

Therefore, we conclude that the apparent failure of the Prothonotary to index the judgment in question is not fatal to the City's secured claim. This is especially so when it is recalled that the only reason for an indexing requirement is to provide notice to innocent third parties, i.e., other creditors. *See Chandler, supra,* 76 B.R. at 463–64; and *In re Food Centers, Inc.,* 71 B.R. 16, 18–19 (Bankr.E.D.Pa.1986). We would, however, advise the City that it

must take measures to see that these liens are indexed if it wishes to insulate its position from attacks other than that made here.

With respect to the Debtor's contention that the docketing requirement has not been met, we are not prepared to say that no colorable docketing has occurred. Neither party, nor any sources which we consulted, provided any definitive statement of what "docketing" is. The term obviously contemplates some sort of record-making in a book of entry, see BLACK'S LAW DICTIONARY 431 (5th ed. 1979), usually in alphabetized form. 49 C.J.S. 262 (1947). Here, some book with entries is produced. Volumes with court terms and numbers for their entries, which the Prothonotary apparently considered its own, despite their generation by the water department, are produced. There is, however, no alphabetization, which renders the satisfaction of the "docketing" requirement a hazy point.

■ However, we rest our decision not on whether a "docketing" has occurred, which is questionable. Rather, we hold that the mere production of the book with the City's claim against the Debtor in it to the Prothonotary is comparable to the entry of a judgment against the Debtor. Between the immediate parties, a judgment and the lien arising therefrom are valid irrespective of their proper docketing. *See In re MacNulty*, 4 F.Supp. 93, 94 (M.D.Pa. 1933); *York Bank's Appeal*, 36 Pa. 458, 461 (1860); *Ridgway, Budd & Co.'s Appeal*, 15 Pa. 177, 182 (1850); *Lambert v. K-Y Transportation Co.*, 113 Pa.Super. 82, 84–85, 172 A. 180, 182 (1934); *Hickman's Estate*, 40 Pa.Super. 244, 247 (1909); 46 AM.JUR.2d 417–18 (1969); 49 C.J.S., *supra*, at 231–32; and 10 STANDARD PA. PRAC.2d 460 (1982). *Cf. Chandler, supra*, 76 B.R. at 463–64; *Oransky v. Stepanavich*, 304 Pa. 84, 92, 155 A. 290, 292 (1931); and *Jay Vending, Inc. Appeals*, 236 Pa.Super. 258, 263, 345 A.2d 921, 924 (1975). Thus, the City's secured claim against the Debtor must be deemed valid, irrespective of the propriety of its docketing, as a judgment improperly docketed would nevertheless be a valid lien as to a judgment debtor.

We are thus compelled to reject the Debtor's alternative claim that the improper docketing of the liens in issue eviscerates the City's secured claim. We again caution the City to take measures to assure that a process which indisputably constitutes a "docketing" be effected in the future, lest an attack different from that presented by the Debtor here is made to the validity of its water and sewer liens.

We therefore conclude that the City is entitled to prevail, and that the Debtor's Objection to its Proof of Claim must be dismissed. *See In re Lewis*, 80 B.R. 39, 41 n. 1 (Bankr.E.D.Pa.1987). We also perceive that this case has not been administered by the Trustee, probably because the Chapter 13 Statement and Plan were filed on February 19, 1987, about two weeks subsequent to the bankruptcy filing. Therefore, our attached Order will also direct that the Trustee schedule a meeting of creditors forthwith, in order to spur the administration of this case, as well as setting forth our decision to overrule the instant Objection.