**In re Wilson AIKENS, Debtor.**

**Bankruptcy No. 87–00364S.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 16, 1988.

---

**351**

Alan M. White, Community Legal Service, Philadelphia, Pa., for debtor.

Cynthia White, Law Dept., Bkcy. Unit, City of Philadelphia, Philadelphia, Pa.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

For the second time, we are presented with a challenge by the same Chapter 13 Debtor to the secured status asserted by the City of Philadelphia for $1,046.69 of the amount in a Proof of Claim filed in consideration of delinquent pre-petition water and sewer charges. This challenge, spirited undoubtedly by dictum in our last Opinion, at 83 B.R. 344, 346–47 (Bankr.E.D.Pa.1988), that such a challenge might succeed where the past attempt, based on alleged defects in the recording of the lien, had failed, is based upon 11 U.S.C. § 522(f)(1). Unfortunately for the Debtor, due largely to enlightenment cast by the intervening decision of our Court of Appeals concerning

such water and sewer liens in *Ransom v. Marrazzo*, 848 F.2d 398, 404–06 (3d Cir. 1988), the result is the same. We find that the water and sewer lien in issue is a "statutory lien" as opposed to a "judicial lien," because the lien arises irrespective of its proper filing, and hence we decline to disturb the secured status asserted as to that portion of the City's claim in question.

The history of this case and the Debtor's previous efforts at attacking the validity of the City's lien, through the date of our previous Opinion, dated March 14, 1988, are set forth in that Opinion, 83 B.R. at 345–48, and need not be repeated. In that Opinion, we stated as follows, 83 B.R. at 346–47:

Our beginning point is the observation that, historically in Pennsylvania, water and sewer liens become effective when the charges for such services are imposed upon ratepayers, without any prerequisite of any prior court filing by the municipality. *United States v. Oswald & Hess Co.*, 225 F.Supp. 607, 609–11 (W.D.Pa.1964), *rev'd on other grounds*, 345 F.2d 886 (3d Cir.1965); *In re Townsend*, 27 B.R. 22, 24 (Bankr.M.D.Pa. 1982); *In re Taylor*, 17 B.R. 586, 588 (Bankr.W.D.Pa.1982); *Lower Merion v. Manning*, 95 Pa.Super. 322, 324–28 (1928); and *Philadelphia v. DeArmond*, 63 Pa.Super. 436, 439 (1916). However, for reasons unexplained in any sources that we were able to uncover, the Pennsylvania legislature, by enactment of 53 P.S. § 7106(b) in 1963, apparently changed this principle as to the City of Philadelphia only, by providing that, in this City, municipal claims are liens only *after* their docketing by the Prothonotary.

This legislative change raises a nice question as to the applicability of the holdings in *Townsend, supra*, and *Taylor, supra*, that generally Pennsylvania water and sewer liens are statutory liens, as opposed to judicial liens, in the City of Philadelphia. Since at least some sort of *docketing* of a lien now appears to be a prerequisite for the very existence of such a lien in the City, it might be argued that such liens arise only by virtue of a judicial proceeding, rather than, as

elsewhere in the Commonwealth, without the necessity of a prior filing of any judicial proceeding. Thus, Philadelphia water and sewer liens may be classifiable as judicial liens rather than statutory liens. *See* 2 COLLIER ON BANKRUPTCY, ¶ 101.47, at 101–81 (15th ed. 1987). *Compare Gardner v. Pennsylvania Dep't of Public Welfare*, 685 F.2d 106, 109 (3d Cir.), *cert. denied*, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *In re Griggs*, 12 B.R. 443, 445–48 (Bankr.E. D.Pa.1981); and *In re Barbe*, 24 B.R. 739, 740 (Bankr.M.D.Pa.1982) *with Townsend, supra;* and *Taylor, supra. Cf. In re Adams*, 40 B.R. 545 (E.D.Pa. 1984) (City of Philadelphia's water and sewer liens are not "taxes" entitled to priority status under 11 U.S.C. § 507(a)(7)(B)). Whether the City's lien is "judicial" or "statutory" is the determinative factor as to whether a debtor could utilize 11 U.S.C. § 522(f)(1) to avoid a Philadelphia water and sewer lien. However, we note that the Debtor is not seeking here to avoid the City's liens pursuant to 11 U.S.C. § 522(f)(1), and we therefore cannot reach this question here.

On April 6, 1988, the Debtor filed a Motion seeking to avoid the City's lien on the basis of 11 U.S.C. § 522(f)(1), which reads as follows:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (1) a judicial lien; ...

The City filed an opposing Answer on April 20, 1988. When the matter came before us on May 5, 1988, the parties agreed to a briefing schedule which required the Debtor's submission on May 19, 1988, and the City's response on June 2, 1988. Both were received by us in timely fashion.

Neither party cited the *Ransom* case in their brief. This is, of course, understandable on the part of the Debtor, as his Brief was filed prior to its publication. It is less clear why the City, which prevailed in *Ransom,* failed to cite it.

In *Ransom,* the plaintiff property owners instituted a class action disputing the City's denial of water and sewer service to them unless they paid delinquent bills which the respective succeeding owner-customers of the properties had accumulated prior to their acquisition of the respective properties. In affirming a dismissal of the case, the Court of Appeals, citing to and quoting from our prior decision, slip op. at 12, 13, analyzed the nature of the City's water and sewer lien, pursuant to 53 P.S. § 7107, at length. *Id.* at 404–06. Initially, the Court recognized the state-law authority of the City to impose such liens and characterized the lien-enforcement proceeding as "in rem, not in personam." *Id.* at 404. *Accord, McArther v. City of Philadelphia Tax Review Bd.*, 541 A.2d 415, 417 (Pa.Cmwlth.1988) (subsequent owner of premises subject to lien is not personally liable for liened amounts). The *Ransom* court acknowledged the unique requirement imposed upon the City of Philadelphia to docket a water and sewer lien in order to perfect it under 53 P.S. § 7106(b), and accepted our statement of the questionable legality of the mechanism developed by the City in the docketing process. *Ransom,* slip op. at 404–05. However, the Court of Appeals concluded as follows, *id.* at 405–06:

> We find that the liens are not rendered invalid by the improper indexing as against any of the plaintiffs because under section 7432 of Title 53 of the Pennsylvania Statutes liens can be filed or, where improperly filed, refiled at any time except as against bona fide purchasers and mortgagees to whom property is transferred prior to perfection. *Sanft v. Borough of West Grove*, 63 Pa.Cmwlth. 366, 437 A.2d 1332, 1333–34 (1981) (municipal claims for water rates should not be stricken for untimeliness because 53 P.S. § 7432 authorizes the filing of municipal claims at any time, limited only to protect the rights of intervening purchasers or lienors); *Sewer Authority of City of Scranton v. Arnold*, 35 Pa.Cmwlth. 262, 385 A.2d 1034, 1035 (1978) (53 P.S.

§ 7432 prohibits the attachment of imperfected liens against property transferred to a purchaser prior to perfection); *City of Lancaster v. Binkele*, 57 Lanc. Rev. 519, 75 York 125 (1962) (53 P.S. § 7432 provides that where a failure in filing a municipal claim has caused the lien of such claim to be lost, the claim may now be filed properly as a lien and collected, except as to purchasers and mortgagees). *Cf. In re Aikens, supra* (without considering 53 P.S. 7432, holding that a failure to enter claim in the judgment index does not render municipal lien invalid as between a judgment creditor and judgment debtor, but suggesting that the result might differ if the trustee were to challenge the validity of the lien) (footnote omitted).

We deem the Court's holdings highly significant to our disposition here, because what the Court is saying is that, except as to the situation of a bona fide purchaser within the scope of 53 P.S. § 7432, a water and sewer lien attaches and is valid whether it is properly filed or not, even in Philadelphia, where docketing appears to be a prerequisite to the lien's validity. The Court hence concludes that, even in Philadelphia, the filing is simply a means of the City's protecting the priority of its lien as to subsequent purchasers and lienors. Although a bona fide purchaser or one having such rights (like a bankruptcy trustee) may therefore be empowered to invalidate the effect of the lien, the plaintiffs in *Ransom*, who were not bona fide purchasers, and the Debtor here, who is himself the delinquent ratepayer, are not empowered to do so. The lien, as to them, remains valid, and, as to them, fully enforceable despite defects in the docketing process. This characteristic of the City's water and sewer lien is very significant in our following analysis of the Debtor's instant motion.

There are only three types of liens recognized by the Bankruptcy Code. The Debtor here contends that the lien in issue is a "judicial lien," which is the only type of lien that can be avoided by use of § 522(f)(1). Such a lien is defined as a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32).

A second category of liens is a "security interest" which is a lien "created by agreement." 11 U.S.C. § 101(45).

The City contends that the lien in issue falls into the third category of liens, i.e., a "statutory lien," which is defined in 11 U.S.C. § 101(47), as a

lien arising solely by force of statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest of judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

As the definition of "statutory lien" expressly indicates, these classifications are mutually exclusive. A "security interest" or a "judicial lien" is not a "statutory lien."

A "security interest," one example of which is a mortgage, may not be avoided by use of § 522(f)(1). *See e.g., In re Walker*, 72 B.R. 552, 554 (Bankr.W.D.Pa.1987); *In re Bickleman*, 71 B.R. 135, 136–37 (Bankr.E.D.Pa.1987); and *In re Baerwald*, 27 B.R. 142, 143–44 (Bankr.E.D.Pa.1983). However, the lien in issue here was not "created by [an] agreement" such as a mortgage, and hence it is clearly not a "secured interest" lien.

A "statutory lien" also cannot be avoided under § 522(f)(1). The determination of whether the lien in issue here is a "judicial lien" or a "statutory lien" is not so easily resolved. In one sense, the lien is created by the statutory scheme established in the Pennsylvania Municipal Claims and Tax Liens Act, 53 P.S. § 7101, et seq., as we pointed out in *Aikens.* 83 B.R. at 345–46. On the other hand, as we pointed out in the portion of the *Aikens* decision quoted at pages 351–52 *supra, id.* at 346–47, at least in Philadelphia, it appeared possible to conclude that a judicial act was needed to create the lien.

Very little guidance for distinguishing a "judicial lien" from a "statutory lien" other than the above-recited less than lucid definitions is provided anywhere in the Code,

or in pertinent legislative history, or in even respected secondary sources. The House Report on the 1978 Code states only as follows in reference to "judicial liens," in commenting upon § 522(f):

> In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If the creditor beats the debtor into court, the debtor is nevertheless entitled to exemptions.

H.R.REP. No. 595, 95th Cong., 1st Sess. 126–27, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6087, 6088. In speaking of the definition of "statutory liens," it states as follows:

> Paragraph (37) defines another kind of lien, "statutory lien." The definition, derived from current law, states that a statutory lien is a lien arising solely by force of statute on specified circumstances or conditions, and includes a lilen of distress for rent (whether statutory, common law, or otherwise). The definition excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics, materialmen's and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien.

Collier provides uncharacteristically sparse historical commentary. The fullest relevant discussion appearing in that text is contained in the discussion of the trustee's power to avoid statutory liens, which is provided in the discussion concerning 11 U.S.C. § 545. There, it is said that, historically, no liens were affected by a bankruptcy filing, 4 COLLIER ON BANKRUPTCY, ¶ 545.01[2], at 545–3 to 545–4 (15th ed. 1987), although this treatment is criticized as creating priorities apart from "policy justiciations ... from the standpoint of sound bankruptcy administration." *Id.*, ¶ 545.01[3], at 545–6. No historical discussion of § 522(f)(1) is proffered.

Other texts, briefly addressing the history of § 522(f)(1), have emphasized it represents a "new Congressional policy," 1 D. COWANS, BANKRUPTCY LAW & PRACTICE, § 4.4, at 405 (1986 ed.), and that there is but "slight precedence" found for it in the Bankruptcy Act. 1 W. NORTON, BANKRUPTCY LAW & PRACTICE, § 26.39, at Part 26—Page 25 (1987). These statements seem consistent with the Congressional statement that § 522(f)(1) "gives the debtor ... rights not available under current law with respect to exempt property." However, our Court of Appeals has held that, "[w]ith respect to avoidance of judicial liens Congress was in 1978 doing nothing more than it had done eighty years before," *In re Ashe*, 712 F.2d 864, 867 (3d Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984), under the predecessor Bankruptcy Act.

Generally speaking, we have taken to heart the Congressional mandate to apply § 522(f)(1) broadly in order to allow debtors to begin their post-bankruptcy "fresh start" with property unencumbered by judicial liens. *See In re Chandler*, 77 B.R. 513, 518–19 (Bankr.E.D.Pa.1987), *aff'd*, C.A. No. 87–6516 (E.D.Pa. March. 30, 1988) [available on WESTLAW, 1988 WL 34921] (§ 522(f)(1) applied to lien attaching to debtor's realty before debtor obtained title to it, even though there is a junior mortgage which, as a "security interest," is unaffected thereby); and *In re Magosin*, 75 B.R. 545, 550 n. 2 (Bankr.E.D.Pa.1987) (§ 522(f)(1) can be used to avoid liens as long as the debtor's avoidance powers are limited to the amount of his exemptions, irrespective of his equity in his property).

We also have recognized the unique aspect of § 522(f)(1) as a tool for allowing a debtor to preserve exemptions, as opposed to other lien-avoidance mechanisms con-

tained elsewhere in the Code. *See In re Mays, Mays v. United States,* 85 B.R. 955, 959–60 (Bankr.E.D.Pa.1988) (§ 522(f)(1) compared to § 506(a)). We note that, as an aspect of the power to claim exemptions, § 522(f)(1) may be invoked only by the debtor. *See* 1 W. NORTON, *supra,* § 26.40, at Part 26—Page 26. By way of contrast, there is no apparent impediment to invocation of § 506(a) by any interested party. *Cf. In re Morrison,* 69 B.R. 586, 588–90 (Bankr.E.D.Pa.1987). Other avoidance powers are generally restricted to the trustee, the most pertinent to the case at hand being the power to avoid statutory liens where a bona fide purchaser would be able to do so. *See* 11 U.S.C. § 545(2). The Debtor is expressly authorized to invoke these powers also where the criteria of 11 U.S.C. §§ 522(h) and (g)(1) are met. *See In re Mason,* 69 B.R. 876, 881–82 (Bankr.E.D. Pa.1987); and *In re Johnson-Allen,* 69 B.R. 461, 470–71 (Bankr.E.D.Pa.1987), *show cause order issued,* 81 B.R. 29 (E.D. Pa.1987). However, as we noted in our previous Opinion, 83 B.R. at 347, the Debtor has not, at least up to this point, opted to attempt to place himself in the shoes of the trustee in leveling his attacks at the City's water and sewer lien.

The legislative history designates a nonexclusive list of liens that are deemed "statutory liens." *See* page 354 *supra.* As the divergence over whether certain matters are "core" or "non-core" proves, the determination of whether certain matters not specifically recited on a non-exclusive listing should be included on same is often very difficult to resolve. *Compare In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr.E.D.Pa.1986) (SCHOLL, J.); and *In re Franklin Computer Corp.,* 50 B.R. 620 (Bankr.E.D.Pa. 1985) (GOLDHABER, CH. J.) (actions brought by a debtor to collect pre-petition accounts receivable are within scope of "core" proceedings set forth in 28 U.S.C. § 157(b)(2)) *with In re Earle Industries, Inc.,* 71 B.R. 919 (Bankr.E.D.Pa.1987) (FOX, J.); and *In re Windsor Communications Group, Inc.,* 53 B.R. 293 (Bankr.E. D.Pa.1985) (KING, J.) (such accounts re-ceivable actions are not "core" proceedings).

Liens such as mechanics' liens are expressly said to be statutory liens in the excerpt from the legislative history and hence it is easy to conclude that such liens are statutory liens which cannot be avoided under § 522(f)(1). *See, e.g., In re Wisner,* 77 B.R. 395, 397–98 (Bankr.N.D.N.Y.1987).

Tax liens are expressly said to be statutory liens and hence are not avoidable under § 522(f)(1) either. *See In re Wilson,* 25 B.R. 61, 63 (Bankr.W.D.Pa.1982); and *In re Booth,* 17 B.R. 842 (Bankr.E.D.Pa.1982). However, water and sewer lien rents are not "taxes," *In re Adams,* 40 B.R. 545, 550 (E.D.Pa.1984), and hence water and sewer liens could hardly be classified as tax liens.

As we noted in the quotation from our previous Opinion reiterated here at pages 351–52 *supra,* there are two cases which have held that water and sewer liens arising in municipalities other than the City of Philadelphia, where the docketing requirement of 53 P.S. § 7106(b) does not apply, are "statutory liens" rather than "judicial liens." *In re Townsend,* 27 B.R. 22 (Bankr.M.D.Pa.1982); and *In re Taylor,* 17 B.R. 586 (Bankr.W.D.Pa.1982). The Debtor does not dispute the correctness of these holdings, nor do we. The issue is whether, as we suggested in our prior *Aikens* decision but did not resolve, the presence of 53 P.S. § 7106(b), requiring that a lien be given effect "only ... after the lien has been docketed," should direct a different result.

The strongest cases in the Debtor's arsenal are *Ashe, supra,* 712 F.2d at 868; and *In re Carr,* 18 B.R. 794, 796 (Bankr.E. D.Pa.1982), wherein confessed judgments were held to be avoidable judicial liens; *Gardner v. Pennsylvania Dep't of Public Welfare,* 685 F.2d 106, 109 (3d Cir.), *cert. denied* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); and *In re Griggs,* 12 B.R. 443, 445–48 (Bankr.E.D.Pa.1981), wherein welfare liens were also held to be so avoidable; and *In re Barbe,* 24 B.R. 739, 740 (Bankr.M.D.Pa.1982), wherein a lien imposed under 43 P.S. § 788.1 for over-

payments under the Pennsylvania Unemployment Compensation Law was deemed avoidable under § 522(f)(1). In those cases, judgments entered without prior notice to the debtors and/or pursuant to direct and specific statutory authority were deemed to be judicial liens.

The *Gardner* and *Griggs* decisions regarding the welfare lien are particularly significant, because the welfare lien does not create personal liability as to the recipient and may be enforced only after the lifetime of the recipient and surviving spouse and the children if the realty to which the lien attaches is not transferred. *See In re Andrews,* 78 B.R. 420, 422–26 (Bankr.E.D.Pa.1987); and *In re Camp,* 78 B.R. 58, 60–64, *clarified and reaff'd,* 80 B.R. 347 (Bankr.E.D.Pa.1987). Hence, the welfare lien, like the water and sewer lien in issue, *see Ransom, supra,* slip op. at 404; and *McArther, supra,* at 417, was merely an *in rem* judgment, the enforcement of which was even more limited than that of the water and sewer lien. Yet that factor did not stop the Court of Appeals, in *Gardner,* from categorizing the welfare lien as an avoidable judicial lien.

What we ultimately deem is more significant, however, is the fact that the Court of Appeals has held, in *Ransom,* at the passage quoted herein at page 353 *supra,* that the water and sewer lien attaches irrespective of its improper filing. The recording mandated by 53 P.S. § 7106(b) is thus held to be merely a protective device for the City in making claims as against the claims of subsequent good faith purchasers and lienors. Thus, the lien, in the view of the Court of Appeals, arises "automatically," i.e., whether it is properly recorded or not, as to the delinquent customer himself. This is a distinctive characteristic of a "statutory lien." We find that this holding eliminates any distinction between the rights of the City of Philadelphia, at least as to the water and sewer customers themselves, regarding its water and sewer liens, as compared to the rights of other municipalities in the Commonwealth regarding their liens as to their customers.

We also believe that this conclusion makes practical sense. Neither we nor the Court of Appeals in *Ransom* could find any reason why the City's rights, at least as to its customers, should be different than those of any other municipality in the Commonwealth, nor does the Debtor suggest any reason why this should be so.

The ultimate rejection of our suggestion in our prior Opinion, quoted at pages 351–52 *supra,* that the Debtor might be able to successfully invoke § 522(f)(1) to avoid the City's water and sewer lien exemplifies the fragility of dictum when tested in the actual decision-making process. However, we continue to observe that the Debtor has not exhausted the possibility of attacking the validity of the lien in the shoes of the trustee, assuming that same can be fit upon the facts in issue, pursuant to 11 U.S.C. §§ 545(2), 522(h), 522(g)(1). *Compare* 83 B.R. at 347, where we also suggested this possibility. Our advice that the City revise its procedures to rigorously comply with § 7106(b) lest it open itself to different attacks than those levelled so far therefore still appears well-taken.

Hence, we will enter an Order denying the Debtor's instant motion and once again sustaining the validity of the secured portion of the City's Proof of Claim. We note that the Chapter 13 Trustee did notice and, on April 14, 1988, conduct the 11 U.S.C. § 341(a) meeting of creditors pursuant to our Order of March 14, 1988. Due to the age of this case, we shall further direct him to schedule a Confirmation Hearing forthwith in our attached Order.