In re Wilson AIKENS, Debtor.

Wilson AIKENS, Plaintiff,

v.

CITY OF PHILADELPHIA, WATER REVENUE BUREAU, Defendant.

Bankruptcy No. 87–00364S.
Adv. No. 88–2030S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 20, 1989.

As Amended Jan. 25, 1989.

Alan M. White, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Cynthia E. White, Chief Asst. City Sol., Philadelphia, Pa., for defendant.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

For the third time, we consider an attempt by the same debtor, each time on a different theory, to avoid a water and sewer liens imposed by the City of Philadelphia (hereinafter referred to as "the City") against his residential realty. In the first challenge, brought in the form of the Debtor's Objection to the secured status alleged in the City's proof of claim, we denied the Debtor relief in an Opinion of March 14, 1988, principally on our application of the principle that a judgment debtor himself cannot directly attack the validity of liens against him on the basis of irregularities in the docketing and indexing of same. *See In re Aikens*, 83 B.R. 344, 347–48 (Bankr. E.D.Pa.1988) (hereinafter *"Aikens I"*). In the second challenge, the Debtor filed a motion invoking 11 U.S.C. § 522(f)(1) to attack the City's lien as a "judicial lien." This attempt also failed because, principally on the basis of enlightenment cast by a decision of May 25, 1988, by the Third Circuit Court of Appeals in *Ransom v. Marrazzo*, 848 F.2d 398, 404–08 (3d Cir. 1988), issued subsequently to our Opinion in *Aikens I*, we concluded, in an Opinion of June 16, 1988, that the City's lien was a "statutory lien." *In re Aikens*, 87 B.R. 350, 355–56 (Bankr.E.D.Pa.1988) (hereinafter *"Aikens II"*).

Still undaunted, the Debtor, while not appealing our decisions in either *Aikens I* or *Aikens II*, launched, on August 19, 1988, a third challenge upon the City's water and sewer liens against his property, in the form of this adversary proceeding, attacking the validity of the liens under 11 U.S.C.

§ 545(2).[1]

Invoking the *Ransom* Opinion in the same fashion as we did in *Aikens II,* we are forced to conclude that the City has not, as required by state law, "enter[ed] the claim" represented by the liens in issue "in the judgment index." 53 P.S. § 7106(b). Therefore, in this challenge, based upon § 545(2), we are obliged to grant relief to the Debtor, and determine that the liens in issue may be avoided on this basis.

The history of the Debtor's bankruptcy filing and his pursuit of his other challenges of the City's liens are well-documented in *Aikens I,* 83 B.R. at 345, and *Aikens II,* 87 B.R. at 351–52, and will not be reiterated here. We note that, following the directives in the Orders accompanying *Aikens I,* 83 B.R. at 348, and *Aikens II,* 87 B.R. at 356, a Confirmation Hearing was scheduled in the Debtor's underlying Chapter 13 case, and that the Debtor's Plan of Reorganization was duly confirmed on October 6, 1988. This development has no appreciable impact on the matter before us.

The instant proceeding was listed for trial on October 6, 1988, as well. By agreement of the parties on that trial-date, we entered an Order directing that the matter be presented to us on a written Stipulation of Facts to be filed on or before November 10, 1988, and Briefs to be filed on or before November 30, 1988 (Debtor), and December 20, 1988 (City). Due to apparent difficulties in transmission of the Briefs, the final submission of the City was not in our hands until January 5, 1989.

The Stipulation of Facts is relatively brief and expands somewhat upon the previous description of the City's procedures for indexing and docketing water and sewer liens which we recited in *Aikens I,* 83

B.R. 345, and the Court of Appeals quoted in *Ransom,* 848 F.2d at 405, as follows:

water liens are contained in volumes which are located in the Prothonotary's office in which each entry is given a court term and number. However, the court term and number is not established by the Prothonotary's office, as is the case in other court filings. Rather, the water department itself designates the numbers, assigning same according to the department's own, street-related account numbers from its computer print-outs. A volume with such print-outs is delivered to the Prothonotary once annually, usually in the fall. The names of the property owners on these print-outs are not in alphabetical order, as they are in the judgment index, but according to addresses. The Prothonotary's office does virtually nothing with the volumes except to act as their custodian and make them available to the public upon request.

Since the Stipulation of Facts entered here is not lengthy and constitutes the entire record, we quote it here in full:

1. Wilson Aikens owns the home at 902 E. Price Street, Philadelphia, together with his wife Essie Aikens. The fair market value of the property is $20,-000.00 and the balance due on the first mortgage is $9,300.00.

2. The Prothonotary of the Philadelphia Court of Common Pleas maintains a judgment index, recording all non-municipal judgment liens, indexed by the last name of the defendant, in room 268, City Hall, Philadelphia. There are two signs above the door to room 268, saying "Judgment Index" and "Locality Index."

3. As of the date Mr. Aikens filed his bankruptcy petition, January 27, 1987, the judgment index in room 268 City Hall

---

1. We also note that similar challenges of the validity of the City's water and sewer lien have been instituted by another debtor, apparently on the alternative bases of 11 U.S.C. §§ 522(f)(1) and 545(2), in a case before our colleague, the Honorable Bruce Fox, in *In re McLean,* Bankr. No. 88–11567F. On October 14, 1988, Judge Fox issued a brief Memorandum in *McLean* declining to decide the issue of whether the water and sewer lien in issue was a "judicial

lien" unless a full record were made before him on which he could consider the alternative § 545(2) issue as well. We understand that final briefing will not be completed in the *McLean* matter until January 24, 1989, and we see no reason to delay our deciding this matter during the pendency of that matter. Our decision in this proceeding, as in *Aikens II,* is, of course, strictly our own, and is in no respect joined in by Judge Fox.

did not include any entries under Mr. Aikens' name reflecting In Rem liens held by the City of Philadelphia for water/sewer charges.

4. The Prothonotary of the Philadelphia Court of Common Pleas maintains a municipal and mechanic's liens record open to the public in room 262, City Hall, Philadelphia. In room 262 the public may consult bound paper indices labelled "Locality Index" and/or "Municipal and Mechanic's Lien Index" which cover liens up through and including 1982. Since 1982 the Prothonotary has made available in room 262 computer terminals connected to the account records of the Water Revenue Bureau. Persons searching for water/sewer liens may, given either the property address or the owner's name, call up on the screen the record of all delinquent water/sewer charges for each calendar quarter until the present. On the account record for Mr. Aikens for each year in which a lien was created (1982, 1984, 1985 and 1986), there appears a charge (either $5.00 or $10.00) for the imposition of the lien. After finding the lien charges on the computer terminal, a searcher may then look in the water/sewer lien book (a bound computer printout) for the appropriate year, at the appropriate address, to find the lien number. Since 1982, the combination of the computer terminals and the water/sewer lien books has, according to the Prothonotary, constituted the index to the water/sewer liens.

5. On January 27 [sic—probably meant 23, the filing date], 1987, had inquiry been made of the Prothonotary regarding water/sewer liens at the subject property the inquirer would have been referred to room 262 City Hall.

6. The lien books which may be consulted by the public in Room 262 of City Hall contain lists of City water/sewer liens arranged by property address in numeric and alphabetic order.

7. There is one water/sewer lien book for each calendar year. In order to determine what water/sewer liens exist against Mr. Aikens' home, an individual searching the records must look in each annual lien book separately, under Mr. Aikens' property address. In order to discover all the water/sewer liens, the searcher must use the computer terminal together with the water/sewer lien books.

8. There is no single index in room 262 which sets forth the lien numbers for different years for the same property, by last name of the property owner. A search by name may be conducted from the Water Revenue Bureau account records available on the computer terminals in room 262, to find the delinquent water/sewer charges, and the occurrences of $5.00 or $10.00 lien charges. The lien numbers may then be found in the annual lien printout books.

9. It is customary for Philadelphia title insurance companies to include in a title report the amount of Philadelphia real estate taxes and water/sewer charges due at the time of the report. This is customarily done by obtaining a printout of the water/sewer charges, including the annual lien charges, from the Water Revenue Bureau. Title reports prepared by some Philadelphia title insurance companies report the water/sewer lien numbers and/or the years in which liens were recorded, while reports prepared by other title insurance companies report only the total delinquent water/sewer bill.

10. At some time after March 18, 1988, a sign was posted in room 268 of Philadelphia City Hall advising the public that the water/sewer In Rem Judgment Index is located in room 262.

11. The City notified the debtor at least 90 days prior to the filing of any water/sewer liens of its intention to do so if water/sewer bills remained unpaid.

The presence of the Stipulation obviates our need to make any Findings of Fact. We are therefore preparing our Opinion in narrative form, even though the matter before us is an adversarial proceeding. *See* Bankruptcy Rule (hereinafter "B.Rule") 7052 and Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 52(a). Although the Debtor, in his complaint,

failed to state whether this proceeding is core or non-core, as required by B.Rule 7008(a), it seems clear that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) ("Core proceedings include . . . determinations of the validity, extent, or priority of liens; . . ."). There is every indication, from reading the parties' pleadings and submissions, that the parties agree that we are empowered to determine this matter. *See* 28 U.S.C. § 157(b)(1).

The Code section which is the basis of the Debtor's present attack on the City's statutory liens against his property is 11 U.S.C. § 545(2),[2] which provides as follows:

§ 545. Statutory liens

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

. . .

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists; . . .

While § 545(2) vests avoidance powers solely in the trustee, as we indicated in *Aikens II*, 87 B.R. at 356, the Debtor is empowered to stand in the shoes of the trustee if he satisfies the criteria of 11 U.S.C. §§ 522(h), 522(g)(1), and (g)(2), *accord, e.g., In re Mattis*, 93 B.R. 68, 69 & n. 2 (Bankr.E.D.Pa.1988), which provide as follows:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

(h) the debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(2) the trustee does not attempt to avoid such transfer.

■ The City offers a mild contest to the Debtor's standing to invoke § 545(2) pursuant to these Code sections, contending that the lien in issue may have been voluntary, contrary to the requirement set forth in § 522(g)(1)(A), because the Debtor "gave at least tacit consent to the entry of the subject liens to the extent that he failed to pay delinquent charges when notified that a lien would be entered after 90 days should he fail to satisfy the delinquency." City of Philadelphia's Memorandum of Law in Opposition to Debtor's Motion to Avoid Liens (hereinafter "the City's Memo"), at 6–7. We disagree with the City's contention, as expressed in this passage, that some sort of "implied consent" on the part of the Debtor to the entry of the liens can be inferred simply because he failed to pay his water and sewer bills. We rejected a similar argument in *In re Butler*, 75 B.R. 528, 530 (Bankr.E.D.Pa.1987), *rev'd on other grounds sub nom. Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015 (3d Cir.1988)

**2.** In his Complaint, the Debtor cites to only 11 U.S.C. § 544(a)(3) as the source of his power to attack the lien in issue. However, the Briefs of both parties indicate that they both also consider § 545(2) to be in issue. Since § 545(2) is the specific Code provision relating to the Trustee's power to avoid statutory liens, we believe that it is the appropriate focal Code section, not § 544(a)(3), which refers to the Trustee's avoidance powers generally. To the extent that there

is any distinction between challenge to creditors' interests under either of the two Code provisions, Collier thusly states that the Trustee's powers under § 545(2) are slightly broader: "Note that unlike section . . . 544(a)(3) . . . no exception is made [in § 545(2) ] with respect to bona fide purchasers against whom the lien could not be perfected." 4 COLLIER ON BANKRUPTCY, ¶ 545.04, at 545–19 (15th ed. 1988).

(sale of debtors' home is an "involuntary transfer," subject to attack under 11 U.S.C. § 548(a)(2), even though the debtors arguably "brought on" the sheriff's sale by not making mortgage payments). *See also In re Cole,* 81 B.R. 326, 329 (Bankr.E.D.Pa. 1988); and *In re Mason,* 69 B.R. 876, 881–82 (Bankr.E.D.Pa.1987).

The test for determination of whether the validity of a statutory lien can be successfully attacked under § 545(2), is "that for a statutory lien to be valid against the trustee it must be perfected or enforceable against one acquiring the rights of a bona fide purchaser of [the] property subject to the lien, whether or not such a purchaser exists, at the time of the commencement of the case." 4 COLLIER, *supra,* ¶ 545.04, at 545–19. The issue of "whether such a lien can be perfected against such a purchaser" is a matter "left for determination to state or federal lien law" pursuant to which the statutory lien in issue is created. *Id. Accord, e.g., In re Allgeier & Dyer, Inc.,* 18 B.R. 82, 86–87 (Bankr.W.D.Ky.1982); and *In re Leach,* 15 B.R. 1005, 1009 (Bankr.D. Conn.1981). *Cf. In re Mission Marine Associates, Inc.,* 633 F.2d 678, 680–82 (3d Cir.1980) (decided under predecessor Bankruptcy Act).

We re-emphasize, as we mentioned in passing in *Aikens I,* 83 B.R. at 347; and *Aikens II,* 87 B.R. at 355, that this sort of an attack involves quite different considerations than those at issue in these prior *Aikens* decisions. No longer is the Debtor attacking the lien in the stance of a judgment debtor, which posture itself was fatal to his claim in *Aikens I.* We reiterate our support for the City's position that the lien in issue is a "statutory lien" rather than a "judicial lien" which we articulated in *Aikens II.* The nature of the Debtor's attack, in the shoes of the trustee, is significant, *see also In re Chandler,* 76 B.R. 460, 463–64 (Bankr.E.D.Pa.1987); and *In re Morri-*

son, 69 B.R. 586, 589–90 (Bankr.E.D.Pa. 1987), and puts us on line with such prior decisions of this court as *In re Allenwear & Associates,* 89 B.R. 531, 532–33 (Bankr. E.D.Pa.1988); and *In re Duffy–Irvine Associates,* 39 B.R. 525, 528–30 (Bankr.E.D. Pa.1984), as opposed to those in *Chandler* and *Morrison.* The determinative issue here is whether, under the pertinent Pennsylvania law, the lien in issue was perfected as to a bona-fide purchaser as of the time of the commencement of the Debtor's bankruptcy case on January 23, 1987.[3]

■ The pertinent state law concerning entry and perfection of water and sewer liens in the City of Philadelphia is 53 P.S. § 7106(b), which provides as follows:

(b) With the exception of those claims which have been assigned, any municipal claim, including interest, penalty and costs, imposed by a city of the first class, shall be a lien only against the said property after the lien has been docketed by the prothonotary. The docketing of the lien shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien. The prothonotary shall enter the claim in the judgment index.

As is now well-documented, this provision requires that the city, the only "city of the first class" in Pennsylvania, must, unlike every other municipality in Pennsylvania, docket a water and sewer lien and have it recorded in the judgment index before the lien is perfected. *See Ransom,* 848 F.2d at 404–05; *McLean, supra,* slip op. at 2–3 & n. 1; *Aikens I,* 83 B.R. at 346; and *Aikens II,* 87 B.R. at 351–52. *Compare In re Townsend,* 27 B.R. 22 (Bankr.M.D.Pa. 1982); and *In re Taylor,* 17 B.R. 586 (Bankr.W.D.Pa.1982) (water liens need not be docketed and filed in the judgment index to be perfected in other Pennsylvania municipalities).[4] The determinative issue is

---

**3.** *But see* page 876 *infra,* where the apparent attempts of the City to perfect the liens post-petition and the impact of such attempts in light of 11 U.S.C. § 546(b) are discussed.

**4.** The City's Memo, at 20, purportedly solves the mystery of the reason for enactment of 53 P.S. § 7106(b) by contending that "the legislative his-

tory . . . suggests that the indexing requirement was instituted because municipal claims of cities of the first class were [thereby] given the effect of judgments which when indexed would give priority to City's liens over Federal liens." If this assertion is true, it suggests that we erred in classifying the City's lien as a "statutory lien."

whether the liens in issue were validly perfected through proper docketing and entry into the judgment index *as of the date of the commencement of the Debtor's bankruptcy case.*

In *Aikens II,* we relied heavily upon the analysis of the Pennsylvania law pertinent to City water and sewer liens presented in *Ransom,* 848 F.2d at 404–08. Although we recognize that all of these pronouncements were dictum, we also recognized them as thoughtful, detailed analyses on this subject by the Court of Appeals, emanating from its eminent Chief Judge, speaking for a unanimous panel of Circuit Judges, and hence entitled to great weight. We also found these pronouncements to be persuasive, and we altered several aspects of our analysis in *Aikens I* on the basis of statements made by the Court in *Ransom* in deciding *Aikens II.*

As a result of the *Ransom* discussion of the subject, we concluded, in *Aikens II,* despite our tendencies to the contrary expressed in *Aikens I,* 83 B.R. at 347, that, at least as to the water and sewer customers themselves, City water and sewer liens attached, by operation of law, as soon as water or sewer bills were unpaid, as in other Pennsylvania municipalities. 87 B.R. at 353. Thus, we concluded that requirements that liens be docketed and entered in the judgment index were specific requirements simply for perfection of the liens, required to protect the validity of the City's lien as to bona fide purchasers, pursuant to 53 P.S. § 7432, *id.,* rather than acts of the City necessary to give rise to the lien itself. *Id.*

We therefore reconsidered our statement in *Aikens I,* 83 B.R. at 347, that there was a distinction in the significance of the docketing requirement, as opposed to the requirement of entry of such liens in the judgment index. We concluded, in *Aikens*

*II,* that docketing did not "trigger" the lien. 87 B.R. at 356. Rather, we concluded therein that the liens were triggered by non-payment of outstanding bills, and that docketing, like entry in the judgment index, was merely an aspect of perfection of the liens.

In *Ransom,* the Court of Appeals found that "the liens are not entered in the judgment index of the prothonotary, but rather in a separate lien index." 848 F.2d at 405. The Court of Appeals then queries "how the City's failure to have the liens entered in the judgment index, as directed by 53 P.S. § 7106(b)," *id.,* which is characterized as "improper indexing," *id.,* "affects the validity of the liens with respect to the properties in this case." *Id.* The Court ultimately holds that this "failure" has no effect, but only because none of the plaintiffs in that case were found to be bona fide purchasers, within the scope of 53 P.S. § 7432. *Id.* at 406–07.

We have no inclination to disagree with the assessment of the Court of Appeals, in light of the Stipulation of Facts in this proceeding, that the City's acts to purportedly enter the Debtor's water and sewer liens into the judgment index were "improper" and represented a "failure" to comply with the last sentence of 53 P.S. § 7106(b) on its part. The "judgment index" itself, in whatever room or rooms in City Hall it is located, does not include any entries under the Debtor's name reflecting the liens in issue. The facts that the liens might be located by going to a different index, whether located in a different room or not, and that, by using the information obtained therein, a searcher could ascertain the presence and amount of such liens, are immaterial. It is also immaterial that a sign is now posted in the room containing the judgment index advising the searcher in what room the index containing the water and sewer liens is located. The impor-

---

The City should not be able to reap the benefits of classifying its water and sewer liens as judgments without *also being subject to the detriments effected by a classification of its liens as* "judicial liens." However, we note that the City, though invoking "legislative history" as supportive of its analysis, *cites* us to no such legislative history. Furthermore, this purported justifica-

tion does not answer the important question of why the legislature would desire to have the *City's* liens, *qua federal liens* or for any other reason, considered differently from water and sewer liens of other municipalities in the Commonwealth and hence why § 7106(b) prescribes different procedures for entry of such liens in only the City.

tant fact is that "the judgment index" *itself* does not contain any recordation of the liens. This is what the last sentence of 53 P.S. § 7106(b) requires. No configuration of books and computer-accesses, be they ever so lucid, can serve as a substitute for the statutory mandate that liens be recorded in "the judgment index" in order to be perfected.

The conclusions reached by the *Ransom* court regarding the failure of the City to effect valid indexing of the liens are supported by several authorities as well as by clear logic. In *Penn Title Insurance Co. v. Intercounty Abstract, Ltd.*, 32 Pa.D. & C.3d 635, 645–49 (Montg.Co.C.P.1984), the court points out that the phrase "the judgment index" is a term of art, referring solely to a discrete index which is a single "book" (or, if too voluminous, a single series of books) containing a record of all recorded liens and judgments against particular parties. A legal treatise, in its discussion of indexing of judgments generally, 49 C.J.S. 898–901 (1947), emphasizes that a "judgment index" is a single listing sufficient in itself to give constructive notice to the world at large of the names and descriptions of judgment debtors, with surnames and "Christian" names, arranged in alphabetical order. The water and sewer liens in issue are indisputably *not* contained in "the judgment index" under the Debtor's name. Ascertainment of the liens can only be accomplished by reference to distinct and several indices and computer terminals. In our view, this system represents lack of compliance with the directive in the last sentence of 53 P.S. § 7106(b).

We therefore conclude that, under the applicable state lien law, the City has failed to properly index and therefore properly perfect the liens in issue. They are therefore vulnerable to attack by the Debtor, standing in the shoes of the trustee under § 545(2), from which perspective the Debtor's instant attack on the liens is launched.

Three "bankruptcy law" defenses asserted by the City in its Memo, in response to the Debtor's most recent and potent attack, deserve some mention. The first is an assertion that the debtor's own knowledge of the liens is relevant to his attack on the liens on the basis of §§ 544(a)(3) or 545(2), citing to *McCannon v. Marston*, 679 F.2d 13, 15–18 (3d Cir.1982). In *McCannon*, the Court of Appeals held that an alleged owner's possession of a condominium unit was constructive notice to all the world, including the trustee, of the alleged purchaser's interest therein. Hence, the attack by the trustee of the alleged purchaser's interest in the unit there was unsuccessful. By way of contrast here, the City has failed to allege any act on its part sufficient to give all of the world constructive notice of its claim. *Accord, In re Scott*, 88 B.R. 196, 198–99 (Bankr.E.D.Ark.1988) (repairman's physical possession of vehicle imparted constructive notice of his lien to all the world, including trustee, thus precluding a lien avoidance by the trustee pursuant to § 545(2)). Proper docketing and indexing of the liens, which *would have* had this effect, was not accomplished. The Debtor's own knowledge of the liens' validity is irrelevant in the context of an attack of the lien brought by him from the perspective of a bona fide purchaser, pursuant to § 544(a)(3) or § 545(2).

The City also contends, in brief and less than cogent fashion, that it is entitled to "substitute liens" under 11 U.S.C. § 550(d) in the event that its liens are avoided. However, the City is not a "good faith transferee" of property relative to which its lien is avoided, whose actions have resulted in a "windfall addition" to the Debtor's estate. 4 COLLIER, *supra*, ¶ 550.04, at 550–14. The City did not improve the Debtor's property in reasonable reliance of the validity of its liens. *See id.* at 550–13. There was no "transfer" at all. The City's *own* failure to index the liens resulted in their avoidance. There is no element of reliance by the City upon any party except itself. Section 550(d) therefore has no application here. Under the City's reasoning, the holder of a defective lien could, in *every* case, re-establish its lien simply by showing that there was consideration for the imposition of its lien in the first place. Such reasoning, if adopted, would greatly restrict the impact of §§ 544(a)(3) and 545(2), contrary to their otherwise clear facility as

a weapon to broadly attack liens which were improperly perfected.

Finally, the City invokes 11 U.S.C. § 546(b), which provides as follows:

> (b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

The City's reasoning based on this statutory provision, which is presented in sketchy fashion in its Memo, seems to be that its purported perfection of the liens, by posting the sign in the room where the judgment index is located referring the searcher to the index containing water and sewer liens, although after the commencement of the case, may be considered as an act of post-petition perfection and validation of the liens by operation of § 546(b).

However, we reject this invocation of § 546(b) for several reasons. First, we believe that § 546(b) must be read narrowly. *See In re TM Carlton House Partners, Ltd.,* 91 B.R. 349, 355 (Bankr.E.D.Pa.1988). The purpose of this Code provision is to permit post-petition perfection of a security interest which, under applicable nonbankruptcy law, would permit perfection to relate back to defeat the rights of an intervening interested party. *Id.;* and 4 COLLIER, *supra,* ¶ 546.03, at 546–11. Although perfection of water and sewer liens, under Pennsylvania law, could relate back to defeat the rights of a property owner such as the Debter himself, *see, Ransom,*

*supra,* 848 F.2d at 405; and *Sanft v. Borough of West Grove,* 63 Pa.Cmwlth. 366, 437 A.2d 1332, 1333–34 (1981), it could not relate back, under that law, to defeat the rights of an intervening bona fide purchaser of the Debtor's property. *See Ransom, supra,* 848 F.2d at 405–06; and *Sewer Authority of City of Scranton v. Arnold,* 35 Pa.Cmwlth. 262, 385 A.2d 1034, 1035 (1978). When invoking § 545(2), the Debtor inherits the rights of a bona fide purchaser that purchases his property at the commencement of the case. Hence, § 546(b) does not permit the City to avert the instant attack on its liens by the Debtor.

Secondly, the purpose of § 546(b) is to allow acts by a lienholder, in furtherance of perfection of the lien, to continue in its ordinary course of perfecting its lien despite the intervention of bankruptcy. There is no evidence that the City was proceeding in the ordinary course of perfecting the liens in issue when the Debtor filed bankruptcy on January 23, 1987. Rather, the posting of the sign, on March 18, 1988, was quite obviously a well-advised (although inadequate) response to our precautionary statements to the City in *Aikens I,* 83 B.R. at 348, as to prevention of other attacks against its liens by other debtors in the future. It seems clear to us that this action was not a measure taken in the ordinary course of furtherance of perfection of the liens against the Debtor envisioned by § 546(b). This Code section should not be read in such a way as to allow a lienholder to simply proceed to perfect his lien by correcting any deficiencies which a court holds are extant in a § 545(2) proceeding. If read to allow perfection of a "statutory lien" after a bankruptcy court declares the lien invalid, § 546(b) would render § 545(2) a complete nullity.[5]

Finally, as we indicated at page 874, *supra,* the posting of the sign in the room where the judgment index is located which refers the searcher to another room is not

---

**5.** The reasoning of the only case cited by the City on this point, *Maryland National Bank v. Mayor & City Council of Baltimore,* 723 F.2d 1138 (4th Cir.1983), is not to the contrary of our conclusion. First, the court held that the State

and City *did* perfect the tax liens in issue, by operation of law, when they became due. 723 F.2d at 1142. Secondly, the court held that, if perfection occurred post-petition, it occurred in the ordinary course of same. *Id.* at 1143–44.

a sufficient measure to accomplish perfection of the liens in issue. The sign, though perhaps facilitating the cross-referencing of the various indexes and computer searches necessary to find water and sewer liens, does not accomplish the requisite entry of the liens in "the judgment index" itself.

The City's defenses are, therefore, in this instance, unavailing. We will therefore proceed to enter a judgment in favor of the Debtor, declaring the city's purported water and sewer liens against the Debtor's property avoidable, pursuant to 11 U.S.C. § 545(2), and, consequently, invalid as against the property of his estate.