**In re Sharon Iris RICE a/k/a Sharon I. Rice, Debtor.**

**Bankruptcy No. 89–14047S.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 19, 1991.

Berneter Mallory, Philadelphia, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., trustee.

David B. Comroe, Lipman, Freiberg, Comroe & Hing, Philadelphia, Pa., for Fleet Consumer Discount Co.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

In its present procedural posture as an apparent motion of the Debtor seeking to avoid a mortgage pursuant to 11 U.S.C. § 522(f)(1), it is clear that we must deny relief to the Debtor in this contested matter. However, we recognize that the Debtor could refile this matter in the posture of an adversary proceeding attacking the mortgage in the shoes of the Trustee, pursuant to 11 U.S.C. §§ 522(h), (g)(1), and 544(a). We therefore address, but do not decide, the issue which underlies the substance of this matter: whether the Debtor, standing in the shoes of the Trustee, can avoid a mortgage which is defectively acknowledged.

### B. PROCEDURAL AND FACTUAL HISTORY

SHARON I. RICE ("the Debtor") filed the underlying individual Chapter 7 bankruptcy case on November 3, 1989. A dis-

charge order was entered in the Debtor's favor without incident on December 3, 1990. However, on February 6, 1991, before the case was closed, the Debtor filed the "Motion to Reconsider Issue of Discharge for Avoidance of Lien and Injunctive Relief" ("the Motion") which is presently before us. The Motion, directed against FLEET CONSUMER DISCOUNT CO., trading as Fleet Finance Co. ("Fleet"), reads, in pertinent part, as follows:

4. Debtor would like to avoid the lien [of Fleet] which this Court has jurisdiction over pursuant to 11 U.S.C. § 522 to avoid and cancel the lien held by Fleet.

5. The lien impairs an exemption that debtor has claimed in the property.

. . . . .

WHEREFORE, debtor prays for an order to reconsider the order of discharge for the sole purpose of avoiding the lien on her residential property and to enjoin Fleet Financial from collecting any funds fro [sic] payment on the lien. Debtor prays for such other relief as may be just and proper.[1]

Understandably puzzled as to the thrust of the Motion, Fleet filed a Response indicating that it was owed a loan balance secured by a mortgage, which it asserted could not be avoided pursuant to 11 U.S.C. § 522(f)(1). It also averred that, since the Debtor's discharge had already been entered, it was too late to attack its mortgage. After two continuances, a hearing on the matter was scheduled on the Motion on March 28, 1991, on a must-be-tried basis.

The Debtor testified at length at that hearing. She stated that Fleet's obligation arose from a transaction of October 28, 1987, in which she agreed to purchase vinyl siding for her home at 1910 Elston Street, Philadelphia, Pennsylvania 19138 ("the Home") from Neptune Pool Installers, Inc., trading as Hallmark Builders ("Hallmark"). She stated that the only agent of Hallmark whom she met was a salesman named Mr. Repici, who had her execute, in the Home, a document describing the work to be per-

---

1. The Debtor's request to "reconsider her discharge" was not well-taken. See In re Dinh, 90 B.R. 743, 745–46 (Bankr.E.D.Pa.1988). Further-

more, there is no need for her to have us vacate her discharge for her to assert her claim. See page 193 infra.

formed and a Home Improvement Installment Contract ("the HIFC") to memorialize the transaction. The HIFC, naming Fleet as assignee, and thus apparently prepared by Fleet, states that the Debtor granted a mortgage on the Home to Hallmark, to be assigned to Fleet, as security for the loan. Although the signature of her name upon the mortgage appears very similar to her signature on other documents and to samples signed in court, the Debtor firmly denied executing the mortgage. Fleet's mortgage of the Home was duly-recorded, was attested by Alan Portnoy, and notarized by Carol Portnoy. The Debtor denied having ever met either Mr. or Ms. Portnoy.

The Debtor also testified that, subsequent to her discharge in this case, she sold the Home for $40,000, paying off a first mortgage and receiving net proceeds of about $1,800. However, she stated that a sum of about $2,500 had been held in escrow by her realtor in light of the presence of Fleet's recorded and unsatisfied mortgage of record. The Debtor's only complaint about the siding was that some of it blew off in a storm, and she did not make any complaint about this occurrence to Hallmark or Fleet. She did not deny her liability to Fleet for the siding. The Motion was nevertheless filed to obtain the release of the escrowed funds, since the Debtor's personal obligation to Fleet, if unsecured, could be eliminated by her discharge.

None of the other witnesses, including a Fleet employee who testified as custodian of its records, provided any additional evidence which we found to be of assistance in resolving the Motion. The Debtor's counsel represented that she had served a subpoena upon Carol Portnoy which Ms. Portnoy failed to honor. We allowed the Debtor several days to file a motion to seek a bench warrant to compel the attendance of Ms. Portnoy, but the Debtor ultimately eschewed this opportunity. We allowed the parties to file, and serve upon the court in chambers, Briefs supporting their respective positions by April 12, 1991. Only Fleet offered a submission.

We also requested the Trustee, Lawrence T. Phelan, Esquire ("the Trustee"), to investigate the circumstances of the Debtor's transfer of the Home during the pendency of the case. The Trustee advised us, in correspondence, that he had no interest in the transaction or the Motion because of the low amount of equity of the Debtor in the Home.

Two findings of fact, both of which we announced in open court at the close of the testimony, are relevant to the resolution of this controversy. Firstly, despite the Debtor's vigorous protestations to the contrary, we find that she did execute the mortgage. As noted, the signature certainly appears to be hers. We think that it is quite likely that the Debtor simply did not remember the execution of all of the several documents tendered to her by Mr. Repici when she entered into the contract with Hallmark.

Secondly, we find that the purported notarization by Carol Portnoy was defective. We credit the Debtor's testimony that she executed all of the papers in the Home and that only Mr. Repici was present when she did so. We have no doubt that the Debtor would have clearly recalled the presence of Ms. Portnoy (or Mr. Portnoy, apparently the principal of Hallmark and the husband of the notary) in the Home or a trip to Hallmark's office in the course of this transaction. Therefore, we find that the mortgage was not acknowledged in the presence of the notary public who so attested.

These findings, unfortunately, leave us with a thorny issue regarding the Debtor's ability to avoid Fleet's mortgage. Fortunately, we need not decide this issue to rule upon the Motion, due to its substantial procedural shortcomings.

## C. LEGAL DISCUSSION

### 1. THE MOTION, APPARENTLY PRESENTED AS AN ATTACK ON THE MORTGAGE PURSUANT TO § 522(f)(1), MUST BE DENIED.

The Motion, on its face, *see* page 190 *supra*, appears to represent an attack upon Fleet's mortgage on the basis of 11 U.S.C. § 522(f)(1), which states as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; ...

The language of the Motion appears to track this Code section.

█ However, Fleet's mortgage is not a "judicial lien," which may properly be the target of a § 522(f)(1) motion; rather, it is a "security interest." *See In re Aikens*, 87 B.R. 350, 353 (Bankr.E.D.Pa.1988) (*"Aikens II"*).

A "security interest," one example of which is a mortgage, may not be avoided by use of § 522(f)(1). *See e.g., In re Walker*, 72 B.R. 552, 554 (Bankr.W.D.Pa.1987); *In re Bickleman*, 71 B.R. 135, 136–37 (Bankr.E.D.Pa.1987); and *In re Baerwald*, 27 B.R. 142, 143–44 (Bankr.E.D.Pa.1983).

*Id.*

█ Furthermore, in light of our finding that the Mortgage is not totally void because it is not a forged instrument, it is apparent that the defect in notarization would not affect the validity of the Mortgage as between the Debtor, in her own capacity, and Fleet. *See In re Aikens*, 83 B.R. 344, 347 (Bankr.E.D.Pa.1988) (*"Aikens I"*); *In re Chandler*, 76 B.R. 460, 463–64 (Bankr.E.D.Pa.1987); *In re Morrison*, 69 B.R. 586, 590 (Bankr.E.D.Pa.1987); and *In re McLaughlin*, 28 B.R. 575, 576 (Bankr.E.D.Pa.1983). Therefore, the Motion, as it presently stands, must be denied.

However, this ruling may or may not be the end of this matter. As the decision in *In re Aikens*, 94 B.R. 869, 872 (Bankr.E.D.Pa.) (*"Aikens III"*) *aff'd*, 100 B.R. 729 (E.D.Pa.), *aff'd sub nom. McLean v. City of Philadelphia*, 891 F.2d 474 (3d Cir.1989), exemplifies, the Debtor may be able to meet the criteria necessary to file a more cogent and effective pleading, alleging her right to stand in the shoes of the trustee, under 11 U.S.C. §§ 522(h), (g)(1), which reads as follows:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; ...

If these criteria were met, she could perhaps challenge Fleet's mortgage under the trustee's strong-arm powers, as are thusly set forth in 11 U.S.C. § 544(a):

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the com-

mencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

■ It is possible that the Debtor's reference to § 522 in the Motion could be construed as invoking §§ 522(h), (g)(1) in this fashion. However, such an attack on Fleet's lien should be presented in the form of an adversary proceeding. *See* Bankruptcy Rule 7001(2). The procedure utilized by the Debtor appears too vague and off the mark to provide fair notice to Fleet of this sort of a challenge.

We do note that attacks upon defects in the recording of mortgages and deeds have frequently been brought under 11 U.S.C. § 544(a). *See In re Fisher,* 7 B.R. 490 (W.D.Pa.1980); *In re Orsa Associates, Inc.,* 99 B.R. 609, 620–21 (Bankr.E.D.Pa. 1989); *In re Duffy–Irvine Associates,* 39 B.R. 525, 538 (Bankr.E.D.Pa.1984); and *In re Marta Group, Inc.,* 33 B.R. 634, 639 (Bankr.E.D.Pa.1983). We do not doubt the power of a consumer-debtor to invoke § 544(a) to preserve a fresh start, irrespective of the benefit to creditors of the estate, if the criteria of §§ 522(h), (g)(1) are established to be present. *See, e.g., In re Frascatore,* 98 B.R. 710, 716 (Bankr.E.D. Pa.1989); *Aikens III, supra,* 94 B.R. at 872; and *In re Mason,* 69 B.R. 876, 879–82 (Bankr.E.D.Pa.1987). *But see In re Tillery,* 124 B.R. 127, 129 (Bankr.M.D.Fla. 1991).

■ We also do not agree with Fleet's assertion that an attack on its mortgage at this juncture is untimely. The only applicable statute of limitations (or repose) is 11 U.S.C. § 546(a)(1), which limits a filing under § 544 to two years after the appointment of the Trustee. *See Frascatore, supra,* 98 B.R. at 718–19. This case was filed and the Trustee was hence appointed about 18 months ago. Time limitations should not be read into statutes providing for lien avoidance when they are not there. *Cf. In re Lewis,* 875 F.2d 53, 57 (3d Cir.1989) (11 U.S.C. § 506 can be invoked after confirmation of Chapter 13 plan); and *Aikens III,* 94 B.R. at 870 (11 U.S.C. §§ 522(h), (g)(1) and 545(2) were successfully invoked after confirmation).

Therefore, we shall address, without deciding, the merits of the Debtor's potential challenge to the validity of Fleet's mortgage in light of the defective notarization of the mortgage under 11 U.S.C. §§ 522(h), (g)(1) and 544(a).

2. THE "LATENT EFFECT" IN THE ACKNOWLEDGMENT OF FLEET'S MORTGAGE MAY RENDER IT SUSCEPTIBLE TO ATTACK UNDER 11 U.S.C. § 544(a).

■ Pennsylvania law requires that [n]o deed or mortgage, or defeasible deed, *in the nature of mortgages,* hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years, *unless such deed be acknowledged* or proved and recorded within six months after the date thereof, where such lands lie, as hereinbefore directed for other deeds.

21 P.S. § 621 (emphasis added). Since a mortgage is a defeasible deed, *see id.;* and *Southwestern Nat'l Bank v. Reigner,* 292 Pa. 74, 78, 140 A. 615, 617 (1927), the following provisions of 21 P.S. § 444 (emphasis added), relevant to acknowledgment of deeds, are also pertinent:

§ 444. **All deeds made in the state to be acknowledged and recorded within ninety days**

*All deeds* and conveyances, which, from and after the passage of this act, shall be made and executed within this commonwealth of or concerning any lands, tenements or hereditament in this commonwealth, or whereby the title to the same may be in any way affected in

law or equity, *shall be acknowledged by the grantor, or grantors,* bargainor or bargainers, or proved by one or more of the subscribing witnesses thereto, *before one of the judges of the supreme court, or before one of the judges of the court of record, justice of the peace, or notary public of the county wherein said conveyed lands lie,* and shall be recorded in the office for the recording of deeds where such lands, tenements or hereditament are lying and being, within ninety days after the execution of such deeds or conveyance, *and every such deed* and conveyance that shall at any time after the passage of this act be made and executed in this commonwealth, and *which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance....* (emphasis added).

*See also* 34 P.L.E. 497 (1960).

However, there is a considerable question as to whether a mortgage on which the acknowledgment appears regular on its face and which in fact has been recorded is valid as to third parties who may be affected thereby. The question presented, in a § 544(a) proceeding in which the debtor would be empowered to stand in the shoes of the Trustee, who in turn could stand in the shoes of a creditor who obtained security from the Debtor at the outset of the case or a bona fide purchaser of the Home, is whether a latent defect in the acknowledgment of a mortgage would be sufficient to invalidate the mortgage.

The split of authority on this point is manifested by the comprehensive study of authorities reflected in Annot., *Record of Instrument Without Sufficient Acknowledgment as Notice,* 59 A.L.R.2d 1299, 1315–17 (1958) (cited as "Annot."). Annot. states, *id.* at 1315, that

[i]t has been held that the legal effect of a defect in the acknowledgment of an instrument rendering its recordation il-

legal, although not apparent on the face of the instrument and certificate, is not changed by recordation, and that because the instrument is not one which the statute authorizes to be recorded the recordation imparts no notice of its existence or contents to anyone.

However, on the following page, *id.* at 1316, Annot. states as follows:

The general rule, as established by the numerical weight of authority, is that a defect in the acknowledgment of an instrument required for recordation, which is not apparent on the face of the instrument, as acknowledged, does not prevent the recordation from being constructive notice to persons who may be affected by the transaction recorded.

This split of authority carries through to the several bankruptcy cases which have considered similar issues. *Compare In re Anderson,* 30 B.R. 995, 1002–09 (M.D.Tenn. 1983) (defective acknowledgments permit avoidance of deeds under §§ 544(a)(1) and (a)(2) under Tennessee law), *with In re Bearhouse, Inc.,* 99 B.R. 926, 927–29 (Bankr.W.D.Ark.1989) (defective acknowledgment of mortgage protected from attack by lack of irregularity on the face of the mortgage and recording of the mortgage under Arkansas law). The decisive issue would appear to be what shape the pertinent Pennsylvania law on this subject has taken.

Several old decisions of the Pennsylvania Supreme Court, two of which were penned by Chief Justice Gibson, held that a latent defect in the acknowledgment of a deed or mortgage is not cured by recording. *Kerns v. Swope,* 2 Watts 75, 77–78 (Pa. 1833) (deed registered in wrong county); and *Friedley v. Hamilton,* 17 Serg. & Rawle 70, 71–72 (Pa.1827) (defeasance clause excluded from mortgage).[2] *Accord, Barney v. Sutton,* 2 Watts 31, 40 (Pa.1833) (seal of acknowledging officer omitted from deed); *Heister v. Fortner,* 2 Binn. 40, 44–49 (Pa.1809) (deed recorded in wrong county); *Simon v. Brown,* 3 Yeates 186, 187 (Pa.1801) (acknowledgment "illegal and

---

**2.** The holding of this venerable case was recently discussed at length and distinguished in *In re*

*Executive House Associates,* 99 B.R. 266, 270–74 (Bankr.E.D.Pa.1989).

informal"); *Stewart v. Dampman,* 4 Pa. Super. 540, 546–47 (1897) (mortgage "defective in form"); and *Hopkins v. Albee York Homes, Inc.,* 42 D. & C.2d 211, 213 (York Co. C.P.1967) ("There seems to be no question that a defectively recorded mortgage is not given the protection of constructive notice ... as to intervening purchasers or lien holders....") (dictum).

On the other hand, Annot. cites a Pennsylvania case, *Angier v. Schieffelin,* 72 Pa. 106, 108–09 (1872) (officer acknowledging deed was an official of another county),[3] as one of the decisions supporting "the numerical weight of authority" that a recording of even a defective instrument puts third parties on notice, precluding the invalidation of a recorded mortgage containing a latent defect in its acknowledgment. *See also Orsa Associates, supra,* 99 B.R. at 620–21 (absence of certification of grantee's residence); and *Scott v. Penn Title Ins. Co.,* 10 D. & C.2d 129, 144 (Berks Co. C.P.1956) (notary public had "latent interests" in signature notarized, as it was his own forgery) (" 'it is more commonly held that, where the disqualification is latent, the instrument when recorded operates as constructive notice.' 1 C.J.S. 828.").[4]

We therefore conclude that the dictates of Pennsylvania law on this crucial issue are somewhat equivocal and that neither party can take comfort in unbroken precedent which supports its position. Thus, if the Debtor does attempt to resurrect the issue at hand by filing an adversary proceeding, we would be forced to make a difficult decision. Obviously, we would appreciate some assistance from the parties in sorting out these apparently contradictory precedents from the Pennsylvania Supreme Court. Our hope is that, since only about $2,500 is in issue, the parties will voluntarily do what this court would like to do, but in principle cannot: settle the matter with a compromise.

## D. CONCLUSION

With the foregoing explanation, an Order will be entered denying the Motion.

---

**3.** We note that the court, in *Angier,* does not cite *Kerns, supra,* or *Friedley, supra,* but does cite another decision of Chief Justice Gibson, *Bennet v. Paine,* 7 Watts 334 (Pa.1838), which it claims "fully sustain[s]" its reasoning. In *Bennet,* the only defect was the failure of the acknowledgment to expressly set forth the officer's "magisterial character." Perhaps the distinguishing factor is just how serious the defect in the acknowledgment is. If so, query: how do the facts of this case measure up?

**4.** This citation appears intended to be to C.J. rather than C.J.S., as there is no such pagination in C.J.S. It is not clear that C.J.S. supports this position. *See* 1A C.J.S. 169 (1985).