In re Sharon Iris RICE a/k/a Sharon I. Rice, Debtor.

Lawrence PHELAN, United States Trustee, Plaintiff,

v.

FLEET CONSUMER DISCOUNT CO., Defendant.

Bankruptcy No. 89–14047S.
Adv. No. 91–0350S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 21, 1991.

Berneter Mallory, Philadelphia, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., Trustee.

David B. Comroe, Lipman, Freiberg, Comroe & Hing, Philadelphia, Pa., for defendant.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

### SUPPLEMENTAL OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

#### A. INTRODUCTION

The instant proceeding requires us to decide the issue of whether a debtor-mortgagor, standing in the shoes of a bankruptcy trustee, pursuant to 11 U.S.C. §§ 522(h), 522(g)(1), and 544(a), may avoid a duly-recorded mortgage, which is not defective on its face, when the mortgage has not been acknowledged before an officer authorized to make such an acknowledgment. We hold that, under applicable Pennsylvania law, the total failure to obtain an acknowledgment before an authorized officer is not cured by a recording, despite the latency of the defect, and nor by a curative statute which renders any "informality or

defect" in an acknowledgment immaterial as to *bona fide* purchasers. Therefore, we are compelled to enter a judgment avoiding the mortgage in issue.

## B. SUPPLEMENTAL HISTORY OF THE CASE

On April 19, 1991, we filed an Opinion, now reported at 126 B.R. 189 (*"Rice I"*), in which we denied, on the ground that the Debtor had improperly invoked 11 U.S.C. § 522(f)(1), the Debtor's "Motion to Reconsider Issue of Discharge for Avoidance of Lien and Injunctive Relief" ("the Motion"), filed on February 6, 1991, in reference to the same mortgage of Defendant FLEET CONSUMER DISCOUNT CO. ("Fleet") which is in issue in this proceeding. We have designated this as a Supplemental Opinion to our Opinion in *Rice I*. We direct the reader to *Rice I* for a history of the underlying Chapter 7 case and the disposition of the Motion, and a summary of the facts adduced at a hearing of March 28, 1991, conducted by this court in reference to the Motion, *id.* at 190–91, which were incorporated into the instant record. We will here take up the history of relevant proceedings from April 19, 1991, forward, and will reiterate what was already said there only where necessary to make the instant decision intelligible.

On April 25, 1991, in light of our disposition in *Rice I*, the Clerk promptly (as it turned out, too promptly) closed this case on April 25, 1991. On May 14, 1991, SHARON IRIS RICE ("the Debtor") filed the instant adversary proceeding. Named as the sole plaintiff was LAWRENCE PHELAN, the interim Trustee in the case ("the Trustee") (incorrectly identified as "United States Trustee" in the caption). This filing was in response to our observation, in *Rice I*, 126 B.R. at 192–93, that the Motion must be denied because the Debtor could not successfully attack the defect in a consensual lien pursuant to 11 U.S.C. § 522(f)(1), or under any other Code provisions, in her own capacity, but that she conceivably could make such an attack if she invoked §§ 522(h), 522(g)(1), and 544(a) in furtherance of her right to attack Fleet's mortgage, standing in the shoes of the Trustee.

The Debtor appears to have slightly misunderstood the nature of §§ 522(h) and 522(g)(1). These Code sections permit *her* to avoid certain transfers if the Trustee does not attempt to do so. However, she has named only the Trustee, who has already expressed that he has no interest in the transaction, *id.* at 191, as the plaintiff in this proceeding rather than herself. This potential procedural defect could have presented an issue under Bankruptcy Rule 7017 and Federal Rule of Civil Procedure ("F.R.Civ.P") 17(a). However, Fleet's failure to assert F.R.Civ.P. 17(a) as a defense appears to effect a waiver of its invocation. *See* 3A J. MOORE, FEDERAL PRACTICE, ¶ 17.15–1, at 17–140 to 17–141 (2d ed. 1991).

Observing the closure of the case on April 25, 1991, we entered an Order of June 4, 1991, requiring the Debtor to file a motion to reopen her case by June 17, 1991, if she wished to pursue this proceeding. A motion to reopen the case was accordingly filed on June 11, 1991, and was granted on July 9, 1991.

In *Rice I*, 126 B.R. at 193–95, we had discussed the potential merit of a proceeding such as the instant one at some length. We pointed out that the Pennsylvania cases discussing the significance of latent defects in acknowledgments of mortgages were "somewhat equivocal." *Id.* at 195. Therefore, we urged both parties to consider the weaknesses of their respective positions and to negotiate a resolution, perhaps in the nature of splitting the $2,500 in issue between them. *Id.* When settlement was nevertheless not forthcoming and another trial appeared imminent, we directed the parties to attend a settlement conference on July 17, 1991, before the Honorable Judith H. Wizmur of the District of New Jersey, who has an outstanding record of successfully resolving some of our most complex and hotly-contested proceedings and contested matters. However, even Judge Wizmur could not bring these parties together. A trial was therefore scheduled on August 13, 1991, and, after two

continuances, was heard on a must-be-tried basis on October 3, 1991.

At this trial, we incorporated the record made on March 28, 1991, in reference to the Motion. The Debtor's counsel then called another of her bankruptcy clients, Ouida Akins ("Akins"), as a witness. Akins testified that, on or about March 19, 1988, she and her husband had, like the Debtor, entered into a contract with Neptune Pool Installers, Inc., trading as Hallmark Builders ("Hallmark"), to perform improvements to the basement of their home. Akins admitted that she and her husband had signed a document designated as a "Mortgage" among the papers presented to them in their home by a Hallmark salesman. However, she claimed that she had agreed with Hallmark that security would be taken against one certain parcel of realty (not their home). However, Hallmark had in fact filled in the documents in such a manner as to obtain a mortgage against another of their properties. The Akins' mortgage, like that of the Debtor in issue, was witnessed by Alan Portnoy, Hallmark's President, and notarized by Carol Portnoy. However, Akins, like the Debtor, was certain that she had never met either of the Portnoys and therefore had not executed any papers in their presence.

At the close of the trial, we allowed counsel for the Debtor and Fleet until October 10, 1991, and October 17, 1991, respectively, to file Briefs in support of their respective positions. The Debtor requested and was granted a one week's consensual extension to make her filing. Having received no submissions as of October 25, 1991, we entered a further Order granting the parties until October 30, 1991, and November 6, 1991, to file and serve their submissions on the court in chambers and opposing counsel, warning the Debtor's counsel that making an untimely submission might result in monetary sanctions against her. Nevertheless, the Debtor's counsel did not serve any submission to us in chambers by October 30, 1991, and numerous messages to her office from the court regarding her submission were unanswered. Fleet's counsel also reported that he was not served with any submission from the Debtor's counsel, and he was therefore compelled to submit his Brief, in timely fashion on November 6, 1991, without the benefit of the Debtor's Brief. On November 13, 1991, Fleet's counsel wrote to us to advise that he had received a copy of the Debtor's Brief on November 12, 1991. Although the copy received by Fleet was time-stamped as filed on October 30, 1991, the Brief was covered by a letter dated November 6, 1991, contained in an envelope postmarked November 8, 1991. We have located no original of the Brief filed with the Clerk (despite the time-stamp on the copy), nor have we ever received a copy of it in chambers, despite our briefing Order and our law clerk's unrequited telephone calls to counsel's office. We finally received a copy from Fleet's counsel on November 19, 1991. The failure of the Debtor's counsel to serve (and possibly to file) her Brief in accordance with our Orders and her refusal to respond to the court's inquiries causes us to impose a monetary sanction of $50 upon her, as we did to other counsel under similar circumstances, in *In re Frascatore*, 98 B.R. 710, 714, 725 (Bankr.E.D.Pa.1989).

## C. DISCUSSION

In *Rice I*, 126 B.R. at 193–95, we provided a comprehensive discussion of pertinent national and Pennsylvania authorities on the issue of the significance of latent defects in acknowledgments of mortgages, gleaned from our independent research. We would have hoped that, in the six months since *Rice I* was decided, the parties would have thoroughly studied and been prepared to comment on the cases cited in this discussion. The Debtor's counsel belatedly submitted an offering of less than two pages and argues primarily that Fleet's failure to record the mortgage until April 7, 1988, over 90 days after its execution on October 28, 1987, violates 21 P.S. § 444. In its Brief, Fleet relies almost exclusively on 21 P.S. § 281.1, a curative statute which we did not cite in *Rice I*, and which reads as follows:

**§ 281.1. Defective acknowledgments prior to 1988**

No grant, bargain and sale, feoffment, deed of conveyance, release, assignment, mortgage or other assurance of lands, tenements and hereditaments, whatsoever, bearing date prior to the year one thousand nine hundred eighty-eight, made, executed and delivered by husband and wife, or by any person or trustee or attorney in fact for any other person or persons, to a bona fide purchaser or purchasers for a valuable consideration, *and acknowledged before any officer duly authorized by law to take such acknowledgment,* shall be deemed, held or adjudged invalid or defective or insufficient in law by reason of any informality or defect in such acknowledgment as not being made according to law, or because the date of the acknowledgment predates the date of the instrument, or by reason of the acknowledgment thereto having been made by any trustee or attorney in fact in his individual capacity instead of as such trustee or attorney in fact; but all and every such grant, bargain and sale, feoffment, deed of conveyance, release, assignment, mortgage or other assurance, so made, executed and acknowledged, as aforesaid, shall be as good, valid and effectual in law for transferring, passing and conveying the estate, right, title and interest of such husband and wife, of, in and to the lands, tenements and hereditaments mentioned in the same, as if all the requisites and particulars of such acknowledgment had been made according to law, and as if such trustee or attorney in fact had made the acknowledgment thereto in such capacity; and the record of the same duly made in the proper office for recording of deeds in this Commonwealth, and exemplifications of the same duly certified, shall be legal evidence in all cases in which the original would be competent evidence (emphasis added).

Pursuant to the "law of the case doctrine," *see In re Cole,* 89 B.R. 433, 436 (Bankr.E.D.Pa.1988), we are obliged to abide by our prior findings in *Rice I* unless we deem those rulings "clearly erroneous" or tending to "work a manifest injustice" upon either of the parties. In *Rice I,* 126 B.R. at 191, we found, despite her vigorous protests to the contrary, that the Debtor did execute the mortgage of October 28, 1987, on her former residence at 1910 Elston Street, Philadelphia, Pennsylvania 19138, in issue, which was assigned to Fleet by Hallmark. However, we also found that the Debtor did not appear before the alleged notary, Ms. Portnoy, and that therefore there had been no valid acknowledgement of the mortgage. Akins' recitation of the facts of her dealings with Hallmark, to the extent that they are relevant at all, tends to support our prior conclusions. Akins, unlike the debtor, admitted that she and her husband did sign the mortgage in favor of Hallmark. However, like the Debtor, she claimed it was not in fact notarized by Ms. Portnoy, despite the latter's purported acknowledgment of it.

At the October 3, 1991, trial, the Debtor's counsel also asserted that the failure of Mr. Portnoy to witness the mortgage and the failure of the holder to record the mortgage within 90 days constituted defects under 21 P.S. § 444, in addition to the failure of the notary to properly acknowledge its execution. We agree that 21 P.S. § 444, relating to acknowledgment of deeds, applies to mortgages. *See Rice I,* 126 B.R. at 193. We also agree that a factual finding that Mr. Portnoy did not witness the Debtor's execution of the mortgage is strongly supported by the evidence and is therefore in order. We agree that 21 P.S. § 444 provides that a document may either be "acknowledged" by the grantor or "proved" by a subscribing witness before an authorized officer, including a notary. We also agree that 21 P.S. § 444 provides that a mortgage is to be recorded within 90 days after its execution. These conclusions, though consistent with our finding in *Rice I* that the acknowledgment was defective, add little to it.

With respect to 21 P.S. § 281.1, Fleet argues that the failure to procure an acknowledgment of the mortgage before a notary is a mere "informality or defect in such acknowledgment" in an instrument which predated 1988, the recording of which cured any defect as to Fleet, alleg-

edly a *bona fide* purchaser of the mortgage. However, we read this statute as providing curative effect only as to a document which *is*, in fact, "acknowledged before any officer duly authorized by the law to take such acknowledgment." The defect which we have found present as to the instant mortgage is that it was *not* acknowledged before any such officer, but that the officer and the witness (the Portnoys) falsely so recited. Therefore, we fail to see how the curative statute supports Fleet's position that its mortgage cannot be invalidated.

In fact, the curative statute, in our view, supports the position of the Debtor, because it tends to highlight the nature of defects which the legislature *will* tolerate and allow to be cured by statute and those which it will *not* tolerate. The defect in issue, an entirely bogus notarization, is, unfortunately for Fleet, among those which *will not* be tolerated.

In our survey of pertinent Pennsylvania law, we cited, as examples of cases where latent defects in acknowledgments were held to be "cured" by recording, *In re Orsa Associates, Inc.,* 99 B.R. 609, 620–21 (Bankr.E.D.Pa.1989) (absence of certification of grantee's residence on deed); and *Angier v. Schiefflin,* 72 Pa. 106, 108–09 (1872) (officer acknowledging a deed in one county was in fact an official only in another county). *See also Hornbeck v. Mutual Bldg. & Loan Ass'n,* 88 Pa. 64, 65–66 (1879) (defective form of certificate of acknowledgment); and *Abraham v. Mihalich,* 330 Pa.Super. 378, 382, 479 A.2d 601, 603 (1984) (grantors were allegedly unaware that a notary had witnessed their signatures).

We note that in every one of these cases, the defects alleged were *not* that a notary or other authorized official failed to acknowledge the signatures of the grantors, but that some error was made *by* the notary or official before whom they were signed. In such circumstances, the defect did not rise to the level of the total failure of the grantors to have the respective documents acknowledged before an authorized official. That is the very distinction drawn by the curative statute, 21 P.S. § 281.1: an acknowledgment accomplished by an authorized official, albeit defectively, will be tolerated; the failure of an authorized official to acknowledge the document will not be tolerated.

In *Rice I*, we noted that the "distinguishing factor" in the cases collected in 126 B.R. at 194–95 appeared to be "how serious the defect in the acknowledgment is." *Id.* at 195 n. 3. With the curative statute as a barometer, it appears that a failure to procure an acknowledgment before an authorized official constitutes a serious defect. There is a logical reason for such a rule. The formality of appearance before an authorized official serves the practical purpose of "bringing home" to the mortgagor the fact that a mortgage is being executed. This formality would have tended to guard against a situation such as occurred in the Debtor's fact pattern, where she in fact executed a mortgage, but was unaware of doing so. In the absence of such a formality, the Debtor executed a mortgage on her home without realizing it. We note that the curative statute would probably render effective most or all of the other recordings recited as having been found ineffective in most of the cases cited by us in *Rice I*, 126 B.R. at 194–95. One possible exception is *Simon v. Brown,* 3 Yeates 186, 187 (Pa.1801), in which the case report merely notes that the acknowledgment was "illegal and informal," which *could* have risen to the level of the document's not having been executed in the official's actual presence. All of the other cases cited represent situations where an acknowledgment before an authorized official, albeit tainted by a procedural error, occurred. We would place the failure of Fleet to record the mortgage within 90 days in the same category of procedural errors, which are cured by proper recording and the impact of the curative statute. However, in the instant matter, we also have the unique situation where no acknowledgment before an authorized official ever took place at all. This, we believe, is a defect which the curative statute cannot cure.

Therefore, after fully considering the curative statute, we find that it rendered immaterial many of the relatively minor defects in acknowledgments which have cropped up in the reported cases and the recording defect in the instant setting. However, we also find that it does not purport to cure such a significant defect as the complete absence of any acknowledgment before an authorized official, as is in evidence here.

■ A few other comments are appropriate. Firstly, we reiterate that the Debtor can succeed only because she is proceeding in the shoes of the trustee under 11 U.S.C. §§ 522(h), 522(g)(1) and 544(a). The mortgage, even if not acknowledged at all, would be valid between the Debtor in her capacity as mortgagor and Fleet in its capacity as assignee of the mortgagee. *See, e.g., Rice I,* 126 B.R. at 192, and cases cited therein.

■ Secondly, we underscore the limitations on constructive notice, such as that provided through recording. Constructive notice preserves obligations only when the state law so provides. *McLean v. City of Philadelphia,* 891 F.2d 474, 478 (3d Cir. 1989), *distinguishing McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982). We have concluded that applicable Pennsylvania state law does not protect mortgages which have not actually been acknowledged at all before authorized officials from attacks by ideal lien creditors.

Thirdly and finally, we note that the law of some states is different from that of Pennsylvania. *See In re Bearhouse, Inc.,* 99 B.R. 926, 928 (Bankr.W.D.Ark. 189) (Arkansas law: recording insulates any defect in acknowledgment of deed, even the failure to appear before the authorized official). However, our decision would obviously be in harmony with the law of many other states. *See United States v. Arnol & Mildred Shafer Farms, Inc.,* 107 B.R. 605, 608 (N.D.Ind.1989) (Indiana law: mortgage not properly acknowledged and recorded may be invalidated); *In re Check,* 129 B.R. 492 (Bankr.N.D.Ohio 1991) (Ohio law: mortgage notarized by grantee invalidated); *In re Fleeman,* 81 B.R. 160 (Bankr.

M.D.Ga.1987) (Georgia law: absence of signature of an "unofficial witness" on a deed is fatal to its validity); and *In re Anderson,* 30 B.R. 995 (M.D.Tenn.1983) (Tennessee law: failure of authorized official to provide that he was "personally acquainted" with the grantor renders deed invalid).

**D. CONCLUSION**

An Order granting the relief prayed for in the Complaint, plus the aforementioned monetary sanctions upon the Debtor's counsel, *see* page 725 *supra,* will be entered.

**ORDER**

AND NOW, this 21st day of November, 1991, after a trial of the above proceeding on October 3, 1991, incorporating the prior record on a related matter made on March 28, 1991, and upon consideration of the post-trial submission of the parties, and noting the failure of the Debtor's counsel to serve her Brief in compliance with either our Orders of October 3, 1991, or October 25, 1991, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff, LAWRENCE PHELAN, and against the Defendant, FLEET CONSUMER DISCOUNT CO.

2. The mortgage dated October 28, 1987, between Neptune Pool Installments, Inc. t/a Hallmark Builders and the Debtor, SHARON IRIS RICE ("the Debtor"), on 1910 Elston Street, Philadelphia, Pennsylvania 19138 ("the Premises") is hereby AVOIDED.

3. Fleet shall forthwith mark the said mortgage satisfied and the Debtor is entitled to recover all sums held in escrow from the sale of the Premises pending disposition of this controversy.

4. Monetary sanctions are imposed against counsel for the Debtor, BERNETER MALLORY, ESQUIRE, in the amount of Fifty ($50) Dollars in light of the failure of said counsel to comply with the Orders of this court in briefing this case. This sum shall be paid to the Deputy in Charge

of Bankruptcy Operations and proof of same shall be provided to the court in chambers on or before November 29, 1991, or further sanctions will be imposed upon the said counsel.

5. If no timely appeal from this decision is filed, the Clerk shall re-close the Debtor's underlying bankruptcy case as well as the file of the instant adversary proceeding forthwith.