**In re Heridan S. JONES, Jr., Debtor.**

**Sheridan S. Jones, Jr., and Christine Shubert, Plaintiffs,**

v.

**The Money Store, Inc., Defendant.**

**Bankruptcy No. 01–10733.**
**Adversary No. 01–0074 KJC.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 27, 2002.

Sheridan S. Jones, Jr., Chester, PA, David A. Scholl, Newtown Square, PA, for Debtor.

Christine C. Shubert, Tabernacle, NJ, Trustee.

## MEMORANDUM OPINION[1]

KEVIN J. CAREY, Bankruptcy Judge.

On January 17, 2001, Sheridan S. Jones (the "Debtor") filed a voluntary chapter 7 bankruptcy petition in this Court. On February 7, 2001, the Debtor and Christine Shubert, (the "Trustee") filed a com-

---

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B) and (K).

plaint against the defendant, The Money Store, Inc. ("The Money Store"), seeking to avoid a mortgage lien held by The Money Store against the Debtors' real property located at 1013 Elsinore Place, Chester, Pennsylvania (the "Property"). In the complaint, the plaintiffs alleged that the Collateral Mortgage, originally signed by the Debtor in favor of P. Angelo & Sons, Inc. and assigned to The Money Store, is avoidable under Bankruptcy Code § 544 because it was not properly notarized.

On March 13, 2001, The Money Store filed (i) an objection to the exemption claimed by the Debtor against the Property (the "Exemption Objection"), and (ii) a motion for relief from the automatic stay to continue its attempts to enforce the mortgage in state court (the "Stay Motion").

At the parties' request, an Order was entered on April 30, 2001 placing this adversary proceeding, the Exemption Objection and the Stay Motion on a parallel track so that the related matters could be considered together. The parties filed a Joint Pre–Trial Statement on August 22, 2001. A trial was held on January 4, 2002, at which a consolidated record was made for use in consideration of all three related matters.

For the reasons which follow, I conclude that the Collateral Mortgage cannot be avoided under § 544(a), that the Stay Motion should be granted, and that the Exemption Objection should be sustained.

## FACTUAL BACKGROUND

In August 1995, as a result of a door-to-door solicitation by representatives of P. Angelo & Sons, Inc. (the "Contractor"), the Debtor signed various documents agreeing to pay the Contractor to perform certain home improvements on the Property. The Debtor admits to signing the following documents, all of which are dated August 4, 1995:(i) Credit Application for Property Improvement Loan (Exhibit M–1); (ii) Settlement Statement (Exhibit M–2); (iii) Home Improvement Installment Contract (Exhibit M–3); and (iv) Collateral Mortgage (Exhibit M–9).[2]

The Debtor testified that he recalled only one meeting with the Contractor, which took place in his home, and, at which time, the parties agreed to the scope of the home improvements to be performed on the Property, a price for the improvements, and the financing terms. (Tr. at pp. 8–9, 25–26). The Debtor testified that he signed documents at that initial meeting, although he was not aware that one of the documents was a mortgage. (Tr. at pp. 9–10, 26). The Debtor further testified that the documents were not notarized at that meeting. (Tr. at p. 10). The Debtor received copies of the documents that he signed after the meeting, but he misplaced those papers. (Tr. at pp. 23–24).

The Debtor also signed a Certificate of Completion dated September 11, 1995, although the Debtor testified that the Contractor never completed improvements to one of his windows. (Tr. at p. 25).

The Collateral Mortgage was accepted for filing with the Recorder of Deeds Office for Delaware County, Pennsylvania, where it was recorded in Mortgage Book vol. 1576, page 0535. The Collateral Mortgage was assigned by the Contractor to The Money Store by a document entitled Contractor's Assignment (Exhibit M–4) which was also recorded with the Recorder

---

**2.** The Debtor testified at trial that he executed the above-described documents: Credit Application (Tr. at p. 19), the Settlement Statement (Tr. at p. 20), the Home Improvement Installment Contract (Tr. at p. 22), and the Collateral Mortgage (Tr. at p. 23). *See also* the Joint Pre–Trial Statement.

of Deeds Office for Delaware County in Mortgage Book vol. 1576, page 0540.

The Debtor made the payments required under the Home Improvement Installment Contract until approximately October 27, 1997. Thereafter, The Money Store commenced a mortgage foreclosure proceeding against the Debtor in the Court of Common Pleas, Delaware County, which was stayed by the filing of the Debtor's bankruptcy petition.

## DISCUSSION

**(1)** *Avoidance of the mortgage under § 544(a).*

■ The Debtor asserts that no notary was present at the time he signed the Collateral Mortgage, making the mortgage's acknowledgment defective. Therefore, he contends, the Collateral Mortgage was not properly recorded and can be avoided by the Trustee pursuant to Bankruptcy Code § 544(a).[3]

The property rights of the mortgagor and mortgagee are created and defined by state law and must be reviewed in light thereof. *Schwab v. Home Loan and Investment Bank, FSB (In re Messinger),* 281 B.R. 568, 572 (Bankr.M.D.Pa.2002)(Thomas, J.) *citing Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 36 (3d Cir.1993), in turn, *citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 140 (1979). In *Messinger,* the trustee also attempted to avoid a number of mortgage liens under § 544(a), claiming that

the acknowledgments were defective because the mortgages had not been executed in the presence of the notary. After reviewing the language of the Uniform Acknowledgment Act,[4] Pennsylvania case law, and the history of acknowledgments, Judge Thomas concluded that "the presence of the parties is required, with limited exception, for a proper certificate of acknowledgment in Pennsylvania." *Messinger,* 281 B.R. at 574.

■ Under Pennsylvania law, the acknowledgment does not affect the validity of the mortgage and is not part of the document. *Messinger,* 281 B.R. at 574. The acknowledgment is required for the recording and perfection of a mortgage lien. *Messinger,* 281 B.R. at 573 *citing Abraham v. Mihalich,* 330 Pa.Super. 378, 381, 479 A.2d 601, 603 (1984) and 21 P.S. § 42. The purpose of the acknowledgment is to verify the executing party's identity and voluntary intention to be bound by the terms of the document. *Messinger,* 281 B.R. at 574. Absent an allegation of fraud or forgery, a recorded acknowledgment that is complete and proper on its face is prima facie evidence of the due execution of the mortgage. *Id.*

In *Messinger,* the Court concluded that the trustee could not avoid the challenged mortgages under § 544(a) because there were no allegations of fraud or forgery. *Messinger,* 281 B.R. at 575. None of the debtors involved in the adversary proceedings that were decided together in *Messinger* denied signing the mortgages at

---

**3.** 11 U.S.C. § 544(a) states:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
. . . .
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against

whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

**4.** The Uniform Acknowledgment Act was adopted by Pennsylvania in 1941 and is codified at 21 P.S. § 291.1 *et seq.*

issue. Even assuming that the notary did not personally see the debtors sign the mortgages, this latent defect did not appear on the face of the mortgages. *Id.* Therefore, the Court concluded that, in the absence of any allegation of fraud or forgery, the latent defect did not warrant "interference with the presumptive validity of acknowledged and recorded mortgages, facially complete and regular." *Id.* at 575. In support of this conclusion, the Court wrote:

> The official certificate of the notary, in regular form, is (in the absence of fraud or forgery) conclusive in favor of those who in good faith rely upon it. "Any other rule would work incalculable mischief. It would open wide the door to fraud and perjury, and make recorded acknowledgments a snare to a person dealing with land on the faith and credit of the public records." *Popovitch v. Kasperlik,* 70 F.Supp. 376, 384 (W.D.Pa. 1947). Allowing a challenge where there is an allegation of fraud or forgery would restore the protections that may have been lost by an improper fulfillment of notarial duties. Where the grantors concede that they have signed the deed, and the deed had been delivered, "even a defective acknowledgment would not be a basis for invalidating the recordation." *Abraham v. Mihalich,* 330 Pa.Super. at 382, 479 A.2d at 603.

*Messinger,* 281 B.R. at 574–75.

The Debtor relies on the case *Phelan v. Fleet Consumer Discount Co. (In re Rice),* 133 B.R. 722 (Bankr.E.D.Pa.1991), in which the Court avoided a mortgage under § 544(a), finding that the acknowledgment was defective because the debtor had not signed the mortgage in the presence of the notary. *Rice,* 133 B.R. at 728. The *Rice* Court considered the defendant's argument that 21 P.S. § 281.1, entitled *"Defective acknowledgments prior to 1988,"* cured any defect in the acknowledgment, and concluded that the statute cures errors made by the notary or official witnessing the signature, but does not cure "an entirely bogus acknowledgment" that was never actually made *before* the notary or other official. *Id.* at 727. The *Rice* Court concluded that such a defect was too serious to fall within the curative effects of 21 P.S. § 281.1 because "[t]he formality of appearance before an authorized official serves the practical purpose of 'bringing home' to the mortgagor the fact that a mortgage is being executed." *Id.*

I find far more persuasive the rationale supporting the court's decision in *Messinger:* the purpose of the acknowledgment is to verify the executing party's identity and to assure that such signing is his voluntary act, all for the benefit of those who rely on the faith and credit of the public records. *Messinger,* 281 B.R. at 574.[5] Based upon the foregoing, I conclude that Pennsylvania law requires proof of fraud or forgery to void the perfection of a recorded mortgage containing an acknowledgment that is complete and proper on its face. As stated in both *Messinger* and *Rice,* the ac-

---

**5.** I disagree with *Rice's* conclusion that a notary's purpose is to reinforce the importance of the document being signed to the party signing the document. *Rice,* 133 B.R. at 727. It is the responsibility of the executing party to understand the significance of the documents he or she is signing. "Pennsylvania law affords no leniency for individuals who do not read the contracts that they execute. According to the Pennsylvania Supreme Court, 'in the absence of proof of fraud, failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.' " *Nelson Medical Group v. Phoenix Health Corp.,* 2002 WL 1066959, *2 (Pa.C.P.2002) citing In re Estate of Olson,* 447 Pa. 483, 488, 291 A.2d 95, 97 (1972). *See also Germantown Savings Bank v. Talacki,* 441 Pa.Super. 513, 521, 657 A.2d 1285, 1289 (1995).

knowledgment does not affect the validity of the mortgage, only the ability to record it. *See also Abraham,* 330 Pa.Super. at 382, 479 A.2d at 603.

Next, I turn to the facts of the matter before me. The parties agreed that the Collateral Mortgage was filed with the Recorder of Deeds Office for Delaware County, Pennsylvania, and the acknowledgment appears to be complete and proper on its face. (Exhibit M–9). The Debtor, as a moving party, has the burden of proving the invalidity of the Collateral Mortgage. *Simon v. First Union Mortgage Corp. (In re Burnham),* 231 B.R. 270, 272 (Bankr. N.D.Ohio 1999). The Debtor testified that he recalled only one meeting, that was with the Contractor, at the Debtor's house, at which all of the documents were signed. However, the Credit Application for Property Improvement Loan (Exhibit M–1); Settlement Statement (Exhibit M–2); Home Improvement Installment Contract (Exhibit M–3); and Collateral Mortgage (Exhibit M–9) are all type-written documents that were prepared either by computer or typewriter. It is highly unlikely that the documents could have been signed at the Debtor's first meeting with the Contractor, which was a sales call and, according to the Debtor, the first time the Debtor ever met the Contractor. The defendant contends that there must have been at least one other meeting with the Debtor for the purpose of signing documents. It appears the Debtor has a faulty recollection about the meeting at which the documents were signed.[6]

The Debtor also seems to have a muddled recollection as to the parties with whom he met in connection with the trans-action. The Debtor testified that the people who solicited him identified themselves "Angelo and his son." (Tr. at p. 8). It is difficult to determine whether the people soliciting the Debtor were, in fact, Mr. Angelo and his son, or whether they were representatives of P. Angelo & Sons, Inc. The Credit Application For Property Improvement Loan signed by the Debtor lists "Martin Blue" as the salesperson. (Exhibit M–1) The person who signed as the preparer of the Credit Application was George–Ann Harvey, representing P. Angelo & Sons, Inc. *Id.* The Debtor's recollection of the events surrounding the execution of the documents, including who was present at the time of execution, is incomplete and faulty. The Debtor has not presented sufficient evidence to meet his burden of proving that a notary was not present at the time the documents were signed.

Further, even if the Debtor had proved that the acknowledgment was defective, the Debtor did not prove (or even allege) that the Contractor acted fraudulently in connection with the execution of the documents. The Debtor has admitted that he executed the Collateral Mortgage. (*See* Joint Pre–Trial Statement, Part II, ¶ 8.) Although the Debtor claims that he was not aware he was signing a mortgage, there is no proof that he was defrauded into signing the mortgage.

Neither the testimony of the Debtor nor the existence of other evidence provides a sufficient basis to conclude that the notarization of the Collateral Mortgage is defective, let alone fraudulent. Therefore, the Debtor's request to avoid the Collateral Mortgage under § 544 will be denied.

---

6. The Debtor also presented testimony of his wife, Annie Jones, who agreed that there was only one meeting with the Contractor at the Debtor's home, and that the documents were signed, but not notarized, at that meeting. (Tr. at pp. 30–31). However, I find that Mrs. Jones' testimony is unreliable for the same reason that I believe the Debtor's recollection to be faulty: there must have been a second meeting at which the prepared, typewritten documents were signed.

### (2) *The Stay Motion § 362(d).*

██ The Money Store moved for relief from the automatic stay to seek appropriate remedies in state court to enforce the Collateral Mortgage. Whether to terminate, modify, condition, or annul the bankruptcy stay under section 362(d) is within the discretion of the bankruptcy court. *See Matter of Holtkamp,* 669 F.2d 505 (7th Cir.1982); *In re Shariyf,* 68 B.R. 604 (E.D.Pa.1986); *In re Colonial Center, Inc.,* 156 B.R. 452, 459 (Bankr.E.D.Pa. 1993). This determination is to be made by examining the totality of the circumstances. *Matter of Baptist Medical Center of New York, Inc.,* 52 B.R. 417, 425 (E.D.N.Y.1985), aff'd, 781 F.2d 973 (2d Cir. 1986).

██ In the Joint Pre–Trial Statement, the Debtor agreed that he had not made any payments to The Money Store since August 7, 2000. (Joint Pre–Trial Statement, Part II, ¶ s 16–18). In the response to the Stay Motion, the Debtor admitted that he had not made any post-petition payments to The Money Store. Failure to make post-petition payments to a mortgagee has been found to be sufficient "cause" for relief from the stay under Section 362(d)(1). *In re Rashid,* 1995 WL 496032 (E.D.Pa.1995) citing *In re Wright, Egan & Assocs.,* 60 B.R. 806 (Bankr.E.D.Pa.1986). In addition, there is no equity in the Property.[7] Therefore, the relief requested by The Money Store will be granted for "cause" under § 362(d)(1).

### (3) *The Exemption Objection.*

Because the relief requested in the Debtor's complaint will be denied and there are non-avoidable mortgage liens in excess of the value of the Property, The Money Store's Exemption Objection will be sustained.

An appropriate order follows.

### ORDER

**AND NOW,** this 27th day of September, 2002, upon consideration of a consolidated record regarding (i) Adversary Proceeding No. 01–0074; (ii) the Motion For Relief From The Automatic Stay filed by The Money Store, Inc.(the "Stay Motion"); and (ii) the Objection to Exemptions filed by The Money Store, Inc.(the "Exemption Objection"), it is hereby **ORDERED, ADJUDGED,** and **DECREED** that:

(1) With respect to Adversary Proceeding No. 01–0074, upon consideration of the complaint and answer filed in this adversary proceeding, and after trial on the merits, and for the reasons given in the accompanying Memorandum, judgment is hereby entered in **FAVOR** of the Defendant and **AGAINST** the Plaintiff so that the mortgage lien held by The Money Store against the Debtor's property located at 1013 Elsinore Place, Chester, Pennsylvania is **NOT AVOIDED;**

(2) With respect to the Stay Motion, upon consideration of the Stay Motion and the Debtor's response

---

**7.** The parties agreed that the value of the Property is $55,000. (Joint Pre–Trial Statement, Part II, ¶ 26.) The Debtor's Schedule D lists two mortgage liens against the Property totaling $57,926.00. Although the Debtor's schedules were not introduced into evidence at trial, I take judicial notice of them pursuant to Fed.R.Evd. 201 which "authorizes a court to take judicial notice of an adjudicative fact 'not subject to reasonable dispute' ... so long as it is not unfair to a party to do so and does

not undermine the trial court's fact finding authority." *In re Indian Palms Assoc.,* 61 F.3d 197, 205 (3d Cir.1995). Despite an agreement to consolidate the record for the adversary complaint, the Stay Motion and Exemption Objection, neither party introduced evidence at the hearing regarding the amount of the liens against the Property. It is not unfair to hold the Debtor to the amounts he listed as owing to his secured creditors on his schedules.

thereto, and after trial on the merits, and for the reasons given in the accompanying Memorandum, the Stay Motion is hereby **GRANTED** and the stay imposed by 11 U.S.C. § 362(a) is hereby lifted as to The Money Store, Inc., so that it may enforce appropriate remedies against the Debtor in state court to enforce the Collateral Mortgage dated August 4, 1995; and

(3) With respect to the Exemption Objection, upon consideration of the Exemption Objection and the Debtor's response thereto, and after trial on the merits, and for the reasons given in the accompanying Memorandum, the Exemption Objection is **SUSTAINED.**

(4) The Clerk shall docket this Order on the general case docket and in Adversary No. 01–0074.